Ruffin, C. J.
 

 This cause was heard in this Court at December Term, 1850, on appeal from a decree overruling
 
 *158
 
 a demurrer, as reported in 7 ire. Eq. 83, and the decree was affirmed, and the cause remanded for an answer, and for further proceedings. The defendant put in an answer setting forth an account of his late wife’s personal estate, and then the cause was set down and removed to this Court for hearing. Upon the hearing, the counsel for
 
 the
 
 defendant again raised the question, as to the construction of the marriage articles and contended, that, as the wife did not dispose of the slaves and other personalty, he succeeds to it,
 
 jure mariti,
 
 in preference to the plaintiffs, her children by a former marriage. The contract between the parties, is in the following words:
 

 STATE OF NORTH CAROLINA, ) Johnston County, }
 

 This indenture made and entered into, this 14th day of March, 183'7, between Blackman W. Lee, of the county of Sampson and State, aforesaid, of the first part, and Mary Hooks, of the first named State and county of the second part — witnesseth. That whereas the said Blackman
 
 W.
 
 Lee and Mary Hooks, having entered into an agieement of marriage, which marriage is soon to be solemnized, and the said Mary Hooks being of her own right seized and possessed of a large real and personal estate, is willing and anxious so to execute that the. said Mary Hooks shall not be deprived of the use, benefit and profit of the said estate real and personal, by reason of their intended marriage;, and the said Mary Hooks being of lawful age to be her own agent. Now, therefore, be it known that, tor and in consideration of the premises, and for and in consideration of the sum of one dollar to me, the said Blackman Lee, by the aforesaid Mary Hooks before the sealing and delivering of the presents, the receipt of which is hereby acknowledged, I, the said Blackman
 
 W.
 
 Lee, do hereby sell, assign and deliver, alien and confirm, and have by these presents sold, assigned, aliened, delivered and confirmed, unto Mary Hooks, aforesaid, all the right, title, estate, interest, and benefit, which I may, by operation of law, acquire, derive, or receive, either in law or equity, in and to the following
 
 *159
 
 real and personal estate now belonging to the said Mary Hooks, by the reason of the said intermarriage between the said Blackman W. Lee and Mary Hooks, viz: Twenty slaves, named — Owen, about 27 years old, Pompey, 50 years, Charles, 30, Eliza, 24, Harry, 16, Baltimore, 14, Cader. 10, Henderson, 7, Isaac, 5, Simon, 5, Alvin, 2, Saw-ney, about one month, Patience, 40, Amerite, 25, Rose,
 
 24,
 
 Zeny, 19, Ginney, 10, Margaret, 8, Mary, 3, Martha,
 
 2.
 
 Also, one tract of land in Sampson County, containing 830 acres, lying in the fork of Big Cohera and Ware's Swamp, adjoining A. Flemming and Joshua Craddoe; also, two tracts of land'in the county of Johnston, being the place where the said Mary now lives, containing 807 acres, bounded as per deed from Susanna Blackman to said-Mary Hooks, dated the 21st day of February, 1829 ; also, another tract of land joining the above, containing 30 acres as per deed from John Eason fo said Mary Hooks, bearing date 10th day of December, 1832 ; also, one close carriage and two horses, to have and to hold all and singular the aforesaid lands, negroes, carriage and horses to the only use and benefit of the said Mary Hooks, her executors and assigns forever, and the said Blackman W. Lee doth solemnly promise and agree to and with the said Mary Hooks, that he will, upon the solemnization of the said marriage, or at any time hereafter, when requested by said Mary, make, execute and deliver all and every necessary title, deed, or con veyance, advised, or directed by counsel, learned in law, more completely and effectually to secure the intention of this indenture, which is entirely to divest himself of right, title, and estate in and to the above mentioned lands, negroes, carriage and horses, so that he nor his creditors shall have any right to sell or contract the same or any part of s lid lands, negroes or their increase, carriage and horses. It is further agreed and understood' by and between the contracting parties aforesaid, that the lands, negroes and chattels may remain in the use and occupancy of the said Blackman
 
 W.
 
 Lee, he paying therefor by way of hire or rent, the sum of one dollar on the first day of January, in each and every year, if demanded. It is further agreed by and between the parties to this indenture, that, if it shall be desirable to' sell or exchange the whole or any part of the above mentioned
 
 *160
 
 real and personal property, the said Mary may transfer and lawfully convey the whole or any part of said real or personal property to any person whatsoever, receiving a fair and full consideration for the same, which consideration whether it be in money or property, she shall hold and possess, and keep in the same manner as the property hereby conveyed is to be held and kept, and this indenture to be. as binding and legal- as if a third person had been appointed as agent or trustee, the said Mary acting as her own agent and trustee.
 

 In witness whereof, the parties have hereunto set their bands and seals, the day and year above written.
 

 BLACKMAN W. LEE, (Seal.)
 

 MARY HOOKS, (Seal.)
 

 Signed and sealed in presence of )
 

 John Eason and Young Eldridge.
 
 )
 

 STATE OF NORTH CAROLINA, > . 100„
 

 . 100„ Jounston County, j August Term, 1837.
 

 Then was this marriage contract duly proven in open Court by the oath of John Eason, and ordered to be registered. R. SANDERS, Cl’k.
 

 The propriety of bringing up in this manner the same question, which has been solemnly decided on demurrer and appeal in this very case, is worthy of consideration : and it is not to be understood as admitted, because the Court in this instance considers the matter again.
 

 The merits depend on the enquiry, whether the defendant’s renunciation of his marital rights in the wife’s estates was intended to be partial, or total, except as herein specially excepted.
 

 It is to be noticed at the beginning, that the agreement is not a settlement, and, as such, to be taken as duly and fully expressing the well considered and final family arrangements by these persons of their estates. It consists of articles in the foi'm of covenants between the parties themselves, -without any trustee. Such a contract is con
 
 *161
 
 sidered in a Court of Equity as containing but notes of the heads of an agreement, in its nature executory, and it has been long settled, that the trusts created by it are to be favorably moulded in Equity, so as to effectuate the intention of the parties in reference to provisions for themselves, for the issue of the marriage, and such other person as were apparently within the contemplation of the parties.
 
 Gause
 
 v. Hale,
 
 2
 
 Ired Eq. 241. Such agreements are subject ta be modified, so as even to have the chasms in them, in not providing, for example, for particular events, supplied, when requisite to effectuate the general intention, if it can be collected either from the language of the instrument, or from the stipulations usually inserted in such agreements, or from the condition of the particular contracting parties. The case thus standing on articles, it is to be decided just as it would have been, if in the life time of the wife she had filed her bill to have a settlement made pursuant to the articles. They are exceedingly imperfect, and, obviously, the production of an unskillful and ignorant draftsman, and amount only to notes of the actual agreement, whatever it was, which are very inaccurately expressed. It is incumbent on the Court, therefore, to look through every part of the instrument in order to discover the intention, and then to execute that intention, as gathered from the whole, without regard to particular inaccurate forms of expression.— Thus read, it does not seem difficult to find out what those persons had in their minds, in entering into those articles, imperfect as they are.
 

 The agreement begins by saying, that the feme, being in her own right entitled to real and personal estate, “is anxious
 
 so to execute
 
 that the said Mary Hooks shall not be deprived of the use,
 
 benefit,
 
 and profit of
 
 the estate,
 
 real and personal,
 
 by reason of the intended marriage.”
 
 Then it proceeds: “That m consideration of the premises, I the
 
 *162
 
 said B. W. L. do sell, assign, deliver, alien and confirm unto M. H. aforesaid
 
 all
 
 right, title, estate, interest, and benefit, which I may
 
 by operation of law
 
 derive,
 
 or receive at law or Equity by reason of the intermarriage
 
 between the said L. and M. in and to the real and personal estates now belonging to said M ” It is impossible to read those clauses without seeing, that the purpose was to declare, first, that the teme meant to have her whole estates to herself, and that the benefit of and in them should not be impaired in any respect by reason of her marriage: and, secondly, as the mode of carrying that out, that the husband, as such, should not, directly or indirectly, derive any estate or benefit in the wife’s property. That clause is in the form of a grant from the husband to the feme. But that only shows the plainer the writer’s ignorance of the legal character of the instrument. It does not hide the intention, but rather requires a liberal extension of the terms to give effect to the intention, thus apparent. The plain meaning and effect of the provision is, that he convej ed to her, that is, renounced for himself,
 
 all
 
 the benefit, which “ by operation of law,” that is,
 
 as
 
 husband, he might .derive either at law or in Equity from her property. To exhibit that purpose still more distinctly, if possible, the husband m a subsequent part of the articles again covenants, that he will, at any time alter the marriage, execute any proper deed of settlement which counsel may direct, “more completely and effectually to
 
 secure the intention
 
 of this indenture :
 
 which is entirely to divest himself of right, title and estate”
 
 in the property. It would seem, that nothing could be more explicit as an abandonment of all claim,
 
 jure mariti,
 
 during the coverture or after its termination. No partial renunciation was in the contemplation of the parties, but, on the contrary, the entire divesting of all his interest in the estates. It was urged, however, that this last clause is qualified by what
 
 *163
 
 next follows: “ So that he nor his creditors shall have any right to sell any part” of the property : whence it was inferred from the phrase,
 
 “
 
 so that,” that his renunciation was partial, that is, only to the extent, that the property was not liable to his debts, or to his disposal during the cover-ture. But that is clearly not the sense of that passage, for it would render it, not a qualification, but a direct contradiction, of the clause to which it is appended. That clause has a declaration plain, that he was to be entirely divested of all right; and therefore, the subsequent “ so that” merely expresses one example or consequence of the preceding provision and not a restriction on its generality.
 

 It was further argued, that, notwithstanding all this, the husband must succeed, because there is no express provision, that in the event, which has happened, of the wife’s dying without making a disposition, he shall be excluded and her next of kin let in. How it might be upon a settlement, silent as to that state of things, but with express provision for such entire abandonment as is found in these articles, it is not necessary, and, perhaps, not easy to say* But, undoubtedly, upon such marriage articles, it is obviously more near the intent to imply a trust in favor of those, who take by law, when the husband is out of the way. And it is competent to imply such a trust under articles, because on them, as beforesaid, the enquiry is not tied down to the sense of the positive provisions alone, as in the case of a solemn definitive conveyance, but is the larger one, what sort of settlement would be made under the directions of the Court upon the articles, in order to execute them specifically, according to the intent. Then, it is plain, that when the husband comes in and says, he is to have nothing by operation of law under any circumstances, such a settlement must be decreed as will exclude him at all events, that is, as well from succeeding to his
 
 *164
 
 wife’s estate at her death, as from taking it during her life, except so far as there may be other express provisions in his favor on the face of the agreement. He being thus excluded, the implication arises, of necessity, that those are to take who would do so, if there there were no husband : and consequently the settlement would be directed to contain a trust for the issue of the marriage, if any, and, if not for the heirs generally and next of kin of the wife. Those persons would, thus, not take by descent and succession in the character of heirs and next of kin, but the settlement would make those, who were the heirs and next of kin, purchasers under it. These conclusions are the more satisfactory in this case, when one adverts to the remaining portions of the agreement. For, although incompatible to a great extent with the previous entire renunciation of any benefit, the next stipulation is. that the husband is to have the actual use and benefit of all the property during the coverture at a nominal annual rent and hire, if demanded by the wife — not leaving her a general power of disposition, but restricting her power to exchanging or selling the property for a fair and full consideration in money or property which is, again, to be held in the same manner as the original stock under the agreement. Thus by a final express provision he has the substantial enjoyment and property of all the estates during the coverture. Consequently, if the wife’s absolute right to the property and his renunciation and entire divesting of right, so repeatedly mentioned in the previous parts of the agreement, are not to arise at the termination of the coverture, one is at a loss to assign any meaning to the parties, or any operation to their contract. She is restrained from giving away the property, and can only change its form — by a contract for a valuable consideration, and of the whole he is the beneficial owner during their joint lives. Then he gaye up, according to the agree
 
 *165
 
 ment, only her right by survivorship: and not even that, unless he gave up also his right of succession as husband, if he should be the survivor. For, they both stand on the same footing; since there is no express provision for her taking the property, if she should outlive the husband, more than there is for his not taking it, should he be the longer liver. But the truth is, that each is implied, and the one as much as the other, both from the language in parts of the articles, and from the absurdity oí the whole agreement without such an implication. Hence, the opinion of the Court is, as it was before, with the plaintiffs.
 

 Those positions are sustained by authority, and, indeed, by most of the cases cited for the defendant. In
 
 Murphey v Avery,
 
 1 Dev. and Bat. 25, a feme about to marry covenanted, “ that she will not set up any claim to the real or personal property of the said J. M., either -in right of dower, or distributive share as widow, and she doth release and quit claim forever any present or future interest or claim to any part of the estate or property, real or personal, or any distributive share as next of kin, to which she might otherwise be entitled and it was held, that the article embraced all her legal rights as widow, extending to a year’s allowance, and therefore, that it would operate as an equitable, though not a legal bar, being but a covenant, and not a release. In
 
 Ward
 
 v Thompson, 6 Gill, and John. 349, it was agreed, that all the property of M, the wife, should be for the use and benefit of the said M, hex-heirs and assigns; all which property to be under and subject to the entire management and control of the said M, her heirs, &c., without the interference in any manner of the said T, and the said M and her heirs, &c., to receive and enjoy the rents, &c. thereof, with power to the said M to sell or dispose of the said estates by last will, as if she were sole. The wife died without making any dispo-
 
 *166
 
 sition ; and it was held, that the true character of the contract was not a temporary surrender of the husband’s marital rights during the life of the wife, but an entire abandonment of Riem, and that her kindred and not her husband succeeded- to her personalty. The case of
 
 Tabb
 
 v
 
 Archer,
 
 3 Hen. and Mum. 399, was pressed as an authority for the defendant. But, on the point material to our case, it is the other way. These articles recited, “ that the parties had mutually agreed, that all the estates, real and personal, of the said Frances, the wife, shall be secured to and settled upon her and her heirs, except as therein excepted.” And then, “ in consideration of the intended marriage, and for the intent and purpose aforesaid, the said John, the husband, doth covenant and agree to and with the said Frances, that all the aforesaid estates, real and personal, consisting of, &c., shall remain in the right and possession of said Frances during the continuance of the intended marriage, and that the annual proceeds of it only shall be applied to the support and maintenance of the said J. and F. and their issue if any there should be; and, secondty, the said J. doth farther covenant, that he will never sell or dispose of any part of the real and personal estates (except as before excepted) in any manner, but- the same shall always be held as an inviolable fund for the support of said J. and F. and their issue, if any, applying only the proceeds .or profits for that purpose, but the whole of the original stock shall be inviolably held for the use and benefit of the said F. and her heirs, in the same manner as if the said intended marriage should never take eifect, by which expression is meant and understood, that if the said J. should depart this life, leaving issue of the said marriage, and the said F. should again marry and leave issue, such issue shall be equally entitled to the benefit of this settlement, as the issue of the said intended marriage; and in the event of
 
 *167
 
 the death of the said Frances without issue, then the whole of the aforesaid estates, both real and personal, (except as before excepted) shall go to her next legal representatives.” Upon a bill against the husband and wife by the issue of the marriage, then
 
 in esse,
 
 and by the mother and brothers and sisters of the wife, praying that the estates should be settled pursuant to the articles, so as to secure the respective contingent interests of the several plaintiffs, it was' held, that the husband was entitled to claim according to his legal rights, except such as, by a prior construction of the articles, he had
 
 given up
 
 as a provision for the wife and her issue and other persons within the .articles; and that in that case it was the meaning, that he should be maintained out of the estate, as well as the wife and children ; and, therefore, that he would be entitled to a share of. the profits during t'he coverture and also during his life, if he survived the wife, but to no more, even if he should survive the wife and she leave no issue. Accordingly it was decreed, that the estates should be conveyed to trustees in trust to permit the husband during the joint lives of himself and his wife, a,nd upon the death of either, to permit the survivor, to take the profits for them, him or her, and their issue; and, from and after the death of the survivor, to the use of the issue of the wife, if any such, agreeably to the statute directing the course of descents;
 
 and in default of such issue of said F. living at her death,
 
 then and in that case to hold the whole estates in trust
 
 for the use of the heirs of said Frances,
 
 agreeably to said.statute di-r recting the course of descents. Thus it appears, that under the last limitation in the articles, namely, in default of the issue of the wife, “to her next legal representatives,” the husband was not to succeed to her personal estate, but her own relations as designated by the statute. Why was
 
 *168
 
 that ? It was not because he could not be “ the next legal representative’’ of the wife as to her personalty, for he is preferred to the relations. But it was, because upon the whole instrument it was held, that he intended to renounce all his legal rights, except that of taking the profits during the coverture or during his own life, if the survivor. For, the language of Judge Roane is, that as the support of the husband and wife are equally objects of the marriage, to which the property of each is naturally contributory, the rights of either thereto, accruing by the marriage, will only be lost by an express renunciation, or by a renunciation arising from a plain and necessary implication. In that case the terms were by no means as strong as in ours ; yet a renunciation was implied, whereby the husband was excluded from taking under the articles as next legal representative, or by succession as surviving husband, and consequently, her kindred were to take as purchasers in the settlement decreed. So the Court thinks it must be here. It remains to notice another case cited, that of
 
 Stewart v Stewart,
 
 7 John. C. C. 229. There the intended husband entered into a covenant with two persons as trustees for thejfeme, wherein he recited In's wish to secure her real and personal property to her, so that she might enjoy it as fully, to all intents, after marriage as though she were a
 
 feme
 
 sole ; and then he covenanted with the trustees, that the said C. H. during coverture should have to her own use all the personal property she had or might come to her during the continuance of the marriage, and that she might convey away the same by testament or otherwise ; and that during coverture she should enjoy the rents and profits of her real estate, as fully as if she had remained a
 
 feme
 
 sole, “hereby releasing all his marital rights in and over the same;” and covenanting to make, on request, any other assurances to
 
 *169
 
 carry more fully into effect the intent of this covenant. It •was held by Chancellor Kent, that, on the death of the wife without making any appointment, the husband, as survivor, took her personal effects. But the distinct ground of decision was, that the separate use of the wife was expressly “ during coverture,” with a power of disposition, and therefore the release of the husband at the close of the instrument was also to be restricted to the coverture. That construction was considered to be required, both by the grammatical structure of the sentences and the intention gathered from the whole instrument, and it was probably right. But whether that was right or wrong, the case has no application here, because that release, as it was called, was held to be a special one, restraining the exercise of the marital rights during the coverture only. How it would be, if there had been a stipulation, that the wife should have, not the separate use and profits during the co-verture merely, but “
 
 all
 
 right, benefit, and interest in the property, which, by operation of law, the husband might derive from the marriage, and a corresponding general renunciation thereof by him,” with the intention to divest himself of all right and interest in the above mentioned ne-groes, &c., the Chancellor did not say. But one cannot be at a loss to know what he would have said in such a case, since he puts his decision of that case, not on a general right of the husband to succeed
 
 jure
 
 mariti, notwithstanding a general release, but upon the fact, that the release was not genera], but a very special one, which did not, under the existing state of things, impair his legal right of succession as husband. None of the cited cases, therefore, militate against the construction put by the Court on’ the articles between the defendant and his late wife, but all of them tend strongly to .sustain it. The plaintiffs must,
 
 *170
 
 upon a sound construction of the agreement, be declared to be entitled to the slaves and other personal property left by Mrs. Lee, and the usual enquiries directed.
 

 ' I>ecree accordingly. Pjsr Curiam.