Controversy without action for recovery upon ante-nuptial agreement heard by consent before Olive, Special Judge, duly commissioned to hold the regular August-September Term, 1942, of the Superior Court of Guilford County. The facts agreed, sufficient for determination of this appeal, summarily stated, are these:
I. On 9 August, 1928, R. K. Stewart, as party of the first part, and Nan W. Farriss, as party of the second part, entered into an antenuptial agreement the terms of which are as follows:
"Whereas, a marriage is contemplated between the parties hereto, and the party of the first part has fully informed the party of the second part of his financial situation, including the amount of his assets, liabilities, and net income; and, *Page 388 
"Whereas, the parties hereto desire to make a fair and reasonable provision for the party of the second part, in lieu of the rights, which, after the consummation of said marriage, the party of the second part might, or could have, as wife, or widow, or otherwise, in the real and personal property which the party of the first part now has, or may hereafter own;
"Now, therefore, it is hereby mutually agreed as follows:
"First: That the party of the second part shall receive and accept from the estate of the party of the first part after his death, if she shall survive such party of the first part as his widow:
"The proceeds from certain policies of insurance upon the life of the party of the first part, including all accrued dividends, enumerated as follows:
 "Policy No. Company Amount Beneficiary
4832498-A Metropolitan 5,000.00 Estate 174213 Jefferson Standard 1,000.00 Estate 176070 Jefferson Standard 1,000.00 Estate 2060674 Mutual Life 10,000.00 Estate
"And in addition thereto, the sum of $2,000.00 per annum shall be paid to the party of the second part so long as she may live, from the estate of the party of the first part, which amount shall be a charge upon the estate of the party of the first part, in place and stead of all rights which, as widow, the party of the second part might otherwise have, either as dower in the real estate of the party of the first part, or as a distributive share of the personal property of the party of the first part under any statute now or hereafter in force and effect.
"Second: That the party of the first part, his heirs or assigns, shall hold free from any claim, or right, of dower, inchoate, or otherwise, on the part of the party of the second part, all real property which he may now, or hereafter, own; and that the party of the second part will hereafter execute, or join as a party in, any instrument, which may be requested by the party of the first part, his heirs or assigns, for the purpose of divesting any claim of dower, inchoate, or otherwise, in said property.
"Third: That the party of the first part hereby agrees that the said monies derived from the policies of insurance set out above, together with the annuity of $2,000.00, shall be fully paid to the party of the second part, if she shall survive him as his widow, as soon after his decease as may be practicable; and said sum or sums, until paid, shall constitute a charge upon the entire estate, real or personal, of which the party of the first part may die seized or possessed. *Page 389 
"Fourth: That this agreement shall become effective, only in the event that the contemplated marriage between the parties hereto shall be solemnized."
II. The insurance policies described in the above agreement were in full force and effect, and "there were no liens or any obligations of any kind whatsoever" against them, "either to the insurance company or any person or company."
III. As contemplated in said ante-nuptial agreement the said R. K. Stewart and Nan W. Farriss intermarried on 12 August, 1928, and lived together as man and wife until his death on 6 September, 1941.
IV. R. K. Stewart died testate survived by the said Nan W. Stewart, his widow, and one son, Lincoln Robert Stewart, who was named, and who qualified, as executor of his last will and testament, dated 24 March, 1933, which was duly admitted to probate and recorded. Pertinent parts of the will are these:
"Item 2: Whereas by an ante-nuptial agreement dated August 9, 1928, I made provision for my wife, Nan W. Stewart, in consideration of which she released and relinquished all her dower and other rights in and to my estate, I now ratify said ante-nuptial agreement in every particular and declare that in no event is this will to be so construed as to make her, the said Nan W. Stewart, a devisee or legatee hereunder. I direct my executor, hereinafter named, to pay the sums specified in the said ante-nuptial agreement to the said Nan W. Stewart.
"Item 3: I give, devise and bequeath all my property of whatsoever kind and wheresoever situated, whether real, personal or mixed, to my son, Lincoln Stewart, otherwise known as Lincoln Robert Stewart, in fee simple. In the event that my said son, Lincoln Stewart, should predecease me, I give, devise and bequeath the property which would have been his hereunder to his children in equal shares.
"Item 4: I hereby nominate and appoint my son, Lincoln Stewart, otherwise known as Lincoln Robert Stewart, my lawful executor to execute this my last will and testament according to the true intent and meaning of same . . .
"Item 5: This will is made in contemplation of the fact that, in the event I should predecease my said wife, Nan W. Stewart, my estate must remain open and unsettled in the hands of my said executor, Lincoln Stewart, during the lifetime of my wife above named for the payment of the sums provided for in the aforesaid ante-nuptial agreement. I therefore confer upon my said executor, Lincoln Stewart, as full, absolute and unrestricted power and discretion in the management, control, investment and disposition of my estate as may be consistent with the provisions of the said ante-nuptial agreement." *Page 390 
V. On 12 April, 1937, R. K. Stewart, as evidence of money borrowed from it, executed to the Wachovia Bank and Trust Company, of High Point, North Carolina, his note in sum of $8,500, secured by an assignment of the insurance policies set out and described in the said antenuptial agreement of 9 August, 1928, which note, as renewed on 24 December, 1940, remained unpaid at the time of death of R. K. Stewart on 6 September, 1941. The proceeds of said loan were used in whole or in part by R. K. Stewart for the payment of a loan or loans obtained upon some or all of said life insurance policies from the companies issuing them, which loans were made subsequent to 9 August, 1928 — the first from Metropolitan Life Insurance Company on 16 March, 1933, upon Policy No. 4,832,498-A, and the others subsequent to that date.
VI. The said Nan W. Farriss, now Nan W. Stewart, says she was not aware at any time of any loans which were secured by, or made a lien upon, the aforesaid policies.
VII. The beneficiary, "estate" of the insured, R. K. Stewart, named in said policies, remained and was never changed.
VIII. A controversy having arisen between Nan W. Stewart and Lincoln Robert Stewart, as executor of R. K. Stewart, deceased, as to her right to the face amount of said insurance policies and dividends and accumulations thereon, they, without prejudice to their rights specifically reserved each against the other, agreed (1) that Wachovia Bank and Trust Company should be paid the amount loaned to R. K. Stewart, as described in paragraph V above, (2) that Mrs. Nan W. Stewart should receive the balance of said face amount of the insurance policies plus dividends and accumulations thereon, and (3) that her right to the amount paid to Wachovia Bank and Trust Company as above agreed to be paid should be settled between the R. K. Stewart Estate and Mrs. Stewart by litigation.
IX. On 28 October, 1941, the face amount of said insurance policies, and dividends and accumulations thereon, amounting to $18,329.59, was collected by the Wachovia Bank and Trust Company and the executor, and, in accordance with the agreement as set forth in last preceding paragraph, $8,548.17 was paid to Wachovia Bank and Trust Company, and the remainder of said amount derived from said policies, $9,781.42, was paid to Mrs. Nan W. Stewart; and she, as plaintiff, contends that she is entitled to full proceeds of the insurance policies plus accumulations, and now demands and prays judgment that Robert Stewart, executor as aforesaid, as defendant, pay "to her out of the funds of the estate," the further sum of $8,548.17, that is, the difference between the sum of $18,329.59, so collected upon said insurance policies, and the amount of $9,781.42 so paid to her, with interest thereon from 28 *Page 391 
October, 1941. On the other hand, defendant contends (1) that plaintiff had no vested interest in the life insurance policies until the death of R. K. Stewart; (2) that R. K. Stewart had the right to encumber the insurance policies as he did; and (3) that the proceeds of the insurance policies, under proper interpretation of the term as used in the antenuptial agreement was the sum of $9,781.42, which plaintiff received, and not the sum of $18,329.59, as she contends.
The court, being of opinion, upon the agreed case submitted without action, that plaintiff is entitled to recover of defendant the sum of $8,548.17, with interest thereon from 28 October, 1941, and that same is a charge upon the estate, real and personal, of which the defendant's testator, R. K. Stewart, died seized or possessed, entered judgment therefor in her favor.
Defendant appeals therefrom and assigns error.
The only question debated on this appeal is as to the meaning of that part of the ante-nuptial agreement which provides that, if plaintiff survive R. K. Stewart as his widow, she shall receive and accept from his estate after his death the proceeds from certain policies of insurance on his life in which his estate was beneficiary.
The court below held in effect that it means that plaintiff should receive and accept the amount of money which, under the terms of the designated policies, was collectible, and which was collected thereon from the insurance companies, undiminished by the debt to the Wachovia Bank and Trust Company created by R. K. Stewart after the agreement was made. With this we are in accord.
In this State a man and woman, contemplating marriage, may enter into a valid contract with respect to the property and property rights of each after marriage, and, in equity such contracts will be enforced as written. As each has agreed, so shall he or she be bound. These are some of the cases in point: Gause v. Hale, 37 N.C. 241; Hooks v. Lee 43 N.C. 157;Brooks v. Austin, 95 N.C. 474; Wright v. Westbrook, 121 N.C. 155,28 S.E. 298; Harris v. Russell, 124 N.C. 547, 32 S.E. 958; Perkins v.Brinkley, 133 N.C. 86, 45 S.E. 465.
Like other contracts, if an ante-nuptial agreement is not ambiguous, it should be construed in accordance with its wording to effectuate the intention of the parties as it existed at the time of the execution of the agreement. "In arriving at this intent words are prima facie to be given their ordinary meaning." R. R. v. R. R., 147 N.C. 368, 61 S.E. 185. *Page 392 
"The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have,"Hoke, J., in R. R. v. R. R., supra, quoting Beach on Modern Law Contracts, section 702. See King v. Davis, 190 N.C. 737, 130 S.E. 707. See alsoJones v. Casstevens, post, 411, at this term.
Moreover, in this State ante-nuptial agreements are to be construed liberally so as to secure the protection of those interests which from the very nature of the instrument it must be presumed were thereby intended to be secured. Gause v. Hale, supra.
In the case at hand, debate as to the intention of the parties seems to turn on the meaning of the word "proceeds." Webster defines "proceeds" as "that which results, proceeds or accrues from some possession or transaction." Webster's International Dictionary. Giving to it this meaning in the connection in which it is used in the ante-nuptial agreement, there is no uncertainty as to what the parties intended. That which results or accrues from a life insurance policy at the death of the insured manifestly is the amount of money payable by the insurer, the insurance company, under the terms of the policy. But, if there were any uncertainty as to the meaning of the phrase "proceeds from certain policies of insurance," that uncertainty is removed by the language used in the third paragraph. There R. K. Stewart, as the party of the first part, agrees that "the said monies derived from the policies of insurance set out above, . . . shall be fully paid to the party of the second part," who is the plaintiff, "if she shall survive him as his widow."
Thus it is apparent that, at the time the ante-nuptial agreement was executed, the parties thereto had in mind the moneys to be derived from the designated life insurance policies, and not what remains therefrom after paying a debt of the estate thereafter incurred.
Furthermore, while R. K. Stewart, in his last will and testament, specifies that if he should predecease plaintiff, she is not to be a devisee or legatee thereunder, yet he ratifies the ante-nuptial agreement and directs that she be paid "the sums specified" therein. So be it.
The case of South Carolina National Bank of Columbia v. Bates,175 S.C. 168, 178 S.E. 611, upon which defendant relies, is distinguishable from case in hand.
The judgment below is
Affirmed. *Page 393