JANIE WHITMER PREVATTE, PLAINTIFF v. LLOYD LAWRENCE PREVATTE, DEFENDANT

LLOYD LAWRENCE PREVATTE, PLAINTIFF v. JANIE WHITMER PREVATTE, DEFENDANT

No. 9116DC48

(Filed 17 December 1991)

1. **Divorce and Separation § 162 (NCI4th) — antenuptial agreement — bar to equitable distribution**

A valid antenuptial agreement may serve as a bar to the equitable distribution of property acquired during the marriage.

**Am Jur 2d, Divorce and Separation § 19; Husband and Wife §§ 279, 282.5.**

**Modern status of views as to validity of premarital agreements contemplating divorce or separation. 53 ALR4th 22.**

2. **Divorce and Separation § 162 (NCI4th)— antenuptial agreement—bar to equitable distribution**

   Where the language in an antenuptial agreement entered by the parties in Virginia clearly and unambiguously reflected the wife's intention to relinquish all of her property rights, both real and personal, which would arise out of her marriage to the husband, the agreement operated as a release of the wife's statutory right to equitable distribution, and the trial court erred in concluding that property acquired during the marriage was subject to equitable distribution.

   **Am Jur 2d, Divorce and Separation § 19; Husband and Wife §§ 279, 282.5.**

   **Modern status of views as to validity of premarital agreements contemplating divorce or separation. 53 ALR4th 22.**

3. **Divorce and Separation § 300 (NCI4th)— alimony pendente lite—changed circumstances—premature appeal**

   Defendant husband's assignment of error that the trial court erred in finding that he had not shown sufficient changed circumstances to justify the termination of alimony is dismissed as premature where the record contains no order finally determining plaintiff wife's entitlement to permanent alimony.

   **Am Jur 2d, Divorce and Separation §§ 576, 583.**

APPEAL by husband, Lloyd Prevatte, from judgment and order executed 4 October 1990 in ROBESON County Civil District Court by *Judge Herbert L. Richardson.* Heard in the Court of Appeals 15 October 1991.

In contemplation of marriage, Janie Whitmer and Lloyd Prevatte entered into an antenuptial agreement on 19 December 1968 in the State of Virginia. They were married on 21 December 1968 in South Carolina. The parties moved to North Carolina some time subsequent to their marriage and were residents of North Carolina when this action was filed. On or about May or June of 1980, the parties separated. On 4 June 1982, Janie Whitmer Prevatte, (hereinafter "wife"), filed a complaint in the District Court of Cumberland County seeking alimony *pendente lite*, permanent alimony, and equitable distribution of marital property. Lloyd Prevatte, (hereinafter "husband"), answered pleading the provisions of the antenuptial agreement executed by the parties as a bar

to wife's claims for equitable distribution and alimony. Pursuant to husband's motion to change venue, the case was subsequently removed to Robeson County by order of the District Court of Cumberland County.

On 19 April 1983, a hearing was held in Robeson County District Court to determine the issue of alimony *pendente lite*. The court declined to hear the claim for permanent alimony as husband had requested a jury trial on that issue. The trial court reserved determination of the request for equitable distribution for hearing at a later date. Judge B. Craig Ellis entered judgment on 19 April 1983 awarding wife alimony *pendente lite* and granting her the exclusive possession of the home she had occupied since moving from Virginia.

On 23 June 1983, husband filed an action for absolute divorce. A judgment of absolute divorce was entered by Judge Richardson in Robeson County District Court on 24 August 1983.

On 29 June 1988, husband filed a motion in the cause requesting, among other things, termination of the alimony he was obligated to pay under the order of 19 April 1983. Subsequently, on 14 October 1988, wife filed a motion in the cause renewing her claim for equitable distribution of the marital property. These motions were consolidated for hearing. After the hearing, judgment was deferred for some time "due to the astronomical amounts of exhibits and depositions and other things that were in the file" that the court was required to review. In the 4 October 1990 judgment, the trial court found and concluded that there was a marital estate consisting of described personal property of a total value of $9,800.00, ordered an equal distribution of the marital estate, and ordered husband to pay wife the sum of $4,900.00 to accomplish that distribution. Judge Richardson denied husband's motion to terminate alimony. Husband appealed from that judgment.

*McLean, Stacy, Henry & McLean, by William S. McLean, for plaintiff-appellee.*

*Britt & Britt, by Evander M. Britt, III, for defendant-appellant.*

WELLS, Judge.

As his first two assignments of error, husband contends the trial court erred by ruling that certain property acquired during the marriage was subject to equitable distribution. First, husband

specifically argues that since the trial court found the Virginia antenuptial agreement valid and enforceable in North Carolina, it was error to further find that property acquired by the parties during the course of the marriage was subject to equitable distribution. Second, husband argues it was error for the trial court to grant wife's request for equitable distribution since wife waited more than five years after her initial request and after the absolute divorce to pursue her claim. We agree with husband's first assignment of error and therefore decline to address his second assignment of error.

The trial court concluded that the antenuptial agreement was valid in Virginia and thus enforceable in North Carolina under the full faith and credit clause, but nevertheless concluded that the agreement did not operate to bar wife's interest in property acquired while the parties were North Carolina residents and that such property was subject to North Carolina's equitable distribution law.

"A man and woman, contemplating marriage, may enter into a valid contract before marriage with respect to the property and property rights of either or both after marriage. The term 'antenuptial agreement' or 'marriage settlement' is often applied to such agreements." 2 R. Lee, *North Carolina Family Law* § 179 (4th ed. 1980). Antenuptial agreements have long been recognized as valid in North Carolina. The legislature has enacted several statutory provisions recognizing their validity. *See, e.g.,* N.C. Gen. Stat. § 50-20(d) (1987 & Supp. 1991), N.C. Gen. Stat. § 52-10 (1991) and N.C. Gen. Stat. §§ 52B-1 to -11 (1987). The courts favor antenuptial agreements which determine only the property rights of the parties because they tend to encourage domestic peace and happiness. 2 R. Lee, *supra,* § 179. "Antenuptial agreements are not against public policy, and if freely and intelligently and justly made, are considered in many circumstances as conducive to marital tranquility and the avoidance of unseemly disputes concerning property." *Turner v. Turner,* 242 N.C. 533, 89 S.E.2d 245 (1955).

[1] This Court has held that § 50-20(d) of the Equitable Distribution Act mandates that the "policy favoring property settlements continue so that a prior settlement of spousal property rights would also constitute a plea in bar to the equitable distribution of 'marital property' under Section 50-20." *Small v. Small,* 93 N.C. App. 614, 379 S.E.2d 273 (1989). This is true even if the property agreement

was executed prior to the enactment of the Equitable Distribution Act. *Small, supra*; (Citations omitted). While the agreement at issue in *Small* was a postnuptial agreement, generally speaking, the principles which apply to postnuptial agreements also apply to antenuptial agreements. 2 R. Lee, *supra*, § 186. Both are forms of property settlements. Accordingly, we find that the rationale of *Small* is equally applicable to the case at bar. In *Small*, this Court held that a valid postnuptial agreement will serve as a bar to equitable distribution. We conclude that a valid antenuptial agreement may serve as a plea in bar to the equitable distribution of property acquired during the marriage.

Husband plead the agreement in defense of wife's claims and alleged that the agreement disposed of all their property rights which they acquired due to their marriage. Thus, the question becomes whether the agreement disposed of the wife's right to equitable distribution. The right to equitable distribution is a statutory property right. *Hagler v. Hagler*, 319 N.C. 287, 354 S.E.2d 228 (1987) (*citing* N.C. Gen. Stat. § 50-20(k) (1987) and *Wilson v. Wilson*, 73 N.C. App. 96, 325 S.E.2d 668 (1985)). This right may be waived by a complete property settlement which contains a general release of spousal property rights. *Small, supra*. In construing the meaning of an antenuptial contract, if the agreement is not ambiguous, "it should be construed in accordance with its wording to effectuate the intention of the parties as it existed at the time of the execution of the agreement." *Stewart v. Stewart*, 222 N.C. 387, 23 S.E.2d 306 (1942). "In arriving at this intent words are *prima facie* to be given their ordinary meaning." *Id.* (*citing R.R. v. R.R.*, 147 N.C. 368, 61 S.E. 185 (1908)).

The pertinent provisions of the agreement in question provide:

WHEREAS, it is the desire of each of said parties to waive, relinquish, and renounce any and all property rights, statutory or otherwise, that may arise or result from the said marriage, in the property of the other.

. . .

1. Said party of the second part [Janie Whitmer] covenants and agrees that she shall, after the marriage, have no claim, demand, dower, alimony, support payments, statutory rights, or other right, title, claim or demand of, in or to the property,

real, personal and mixed, now owned, or hereafter acquired by the party of the first part.

The party of the second party [sic] does hereby sell, assign, transfer and set over unto the party of the first part, his [sic] personal representative, heirs and assigns, any claim that she, after becoming his wife or widow, may be entitled to in the property, real, personal and mixed, which the party of the first part now owns or which he [sic] may hereafter acquire.

[2] The above language of the antenuptial agreement clearly and unambiguously reflects the wife's intention to relinquish all of her property rights, both real and personal, which would arise out of her marriage to husband. Thus, we agree that the agreement released all the wife's property rights which arose out of the marriage and also operated to release her statutory right to equitable distribution. We hold that the antenuptial agreement was a valid bar to wife's claim and the trial court erred in concluding the property acquired during the marriage was subject to equitable distribution.

[3] As his final assignment of error, husband contends the trial court erred in finding that he had not shown sufficient changed circumstances to justify the termination of alimony.[1] After careful review of the lengthy record in this case, we have been unable to find any order which has finally determined the issue of wife's entitlement to an award of permanent alimony. "[O]rders and awards pendente lite are interlocutory decrees which necessarily do not affect a substantial right from which lies an immediate appeal pursuant to G.S. § 7A-27(d)." *Stephenson v. Stephenson*, 55 N.C. App. 250, 285 S.E.2d 281 (1981). Accordingly, we dismiss husband's last assignment of error as it is premature.

Reversed in part; dismissed in part.

Judges PARKER and WYNN concur.

---

1. We note that wife did purport to release her claims to alimony in the antenuptial agreement. We are aware that under the Uniform Premarital Agreement Act, N.C.G.S. § 52B-4(a)(4) (1987), parties to a premarital agreement can modify or eliminate spousal support. However, the Act became effective on July 1, 1987 and is applicable to premarital agreements executed on or after that date. 1987 N.C. Sess. Laws ch. 473 § 3. Therefore, the Act is not applicable to the agreement

---

at issue in this case because it was executed in 1968, and the agreement did not bar wife's claim for alimony. *See, Howell v. Landry*, 96 N.C. App. 516, 386 S.E.2d 610 (1989), *cert. denied*, 326 N.C. 482, 392 S.E.2d 90 (1990), decided under law in effect prior to enactment of Chapter 52B.