KIMBERLY WHITE HAMBY, Plaintiff v. WILLIAM RICHARD HAMBY, Defendant

No. COA00-151

(Filed 5 June 2001)

**1. Divorce— equitable distribution—valuation—insurance agency**

The trial court did not abuse its discretion in an equitable distribution case by its valuation of defendant husband's insurance agency, because: (1) plaintiff's expert testified that even though defendant cannot sell his agency, the agency still has value to defendant above and beyond a salary or the net worth of the agency's fixed assets which could be sold; and (2) plaintiff's expert was in a position to assist the court as fact-finder based on his specialized knowledge.

**2. Divorce— equitable distribution—extended earnings plan—deferred compensation benefit—pretrial agreement—marital property**

The trial court did err in an equitable distribution case by its finding of fact that the Nationwide Insurance extended earnings plan is a deferred compensation benefit under N.C.G.S. § 50-20(b)(3) and its value of $179,151.90 should be distributed as marital property, because: (1) the parties' pretrial agreement

stipulating that the plan was marital property effectively waived defendant husband's right to a trial court's later determination of whether the plan was marital property and subject to the equitable distribution provisions of N.C.G.S. § 50-20; and (2) by agreeing that the plan was marital and thereby subject to equitable distribution, defendant also waived his right to retain as separate property that portion of deferred compensation which was not yet vested as of the date of separation.

**3. Divorce— equitable distribution—valuation—deferred income compensation credits**

The trial court did not err in an equitable distribution case by its valuation of defendant husband's deferred income compensation credits in the amount of $128,955.00 even though an exact figure as of the date of separation was not given, because the trial court's simple averaging of the figures resulted in an equitable figure for the purposes of distribution.

**4. Divorce— equitable distribution—automobile—separate property**

The trial court did not abuse its discretion in an equitable distribution case by finding that the parties' automobile was the separate property of plaintiff wife, because: (1) the 16 October 1996 consent judgment of the parties provides that defendant husband shall immediately execute the title to the automobile to plaintiff subject to the terms and conditions of the parties' separation agreement; and (2) there is no mention in the documents that the automobile shall be subject to later division.

Appeal by defendant from orders entered 7 May 1999 and 14 July 1999 by Judge Gregory R. Hayes in Catawba County District Court. Heard in the Court of Appeals 26 February 2001.

*Tate, Young, Morphis, Bach & Taylor, LLP, by Thomas C. Morphis, Sr. and Paul E. Culpepper, for plaintiff-appellee.*

*Crowe & Davis, P.A., by H. Kent Crowe, for defendant-appellant.*

HUNTER, Judge.

Arguing that the trial court failed to equitably distribute the marital assets of defendant-appellant William Richard Hamby and plaintiff-appellee Kimberly White Hamby, Mr. Hamby appeals to this

Court. Specifically, Mr. Hamby contends that his Nationwide Insurance Agency and the deferred compensation plans therefrom were improperly valued and distributed and that the parties' Isuzu Trooper automobile was marital property, and not the separate property of Mrs. Hamby as found by the trial court. We affirm the trial court's orders.

Due to the nature of Mr. Hamby's assignments of error, we need relay only a few facts occurring prior to trial, none of which are in dispute. The parties were married on 27 February 1988, separated on 17 August 1995, and divorced on 19 December 1996. The parties had two children born within the marriage. Mr. Hamby "sought and obtained primary custody of the[] children pursuant to a Consent Judgment." Prior to the marriage, Mr. Hamby worked as an Nationwide Insurance agent in an employee/employer relationship. However shortly thereafter, Mr. Hamby became an independent contractor with Nationwide, opening his own office "to sell Nationwide products as an exclusive representative."

Prior to trial,

> the parties entered into a comprehensive Pre-Trial Order for Equitable Distribution of Marital Property . . . [filed 29 July 1998 which] ma[de] substantial distribution of the personal property of the parties. . . . [Additionally], there were supplemental Pre-Trial Orders agreed upon by the parties prior to trial . . . . Certain real property and other assets of the parties were divided by the parties prior to trial and were not in dispute.

Therefore, the only assets of the parties in question at trial were: Mr. Hamby's Nationwide Insurance Agency, his Deferred Compensation and Incentive Credits, his Extended Earnings, and the parties' 1995 Isuzu Trooper automobile.

[1] Mr. Hamby's first assignment of error is that the trial court erred in its valuation of his insurance agency, in that the valuation was not supported by competent evidence. It is Mr. Hamby's position that since, pursuant to his agency agreement with Nationwide, he cannot transfer or sell the business, the trial court should not have valued the agency as though it could be sold.

We begin by acknowledging that:

> The distribution of marital property is vested in the discretion of the trial courts and the exercise of that discretion will not be

upset absent clear abuse. [Therefore, i]n order to reverse the trial court's decision for abuse of discretion, we must find that the decision was unsupported by reason and could not have been the result of a competent inquiry. Accordingly, the findings of fact are conclusive [on appeal] if they are supported by any competent evidence from the record.

*Beightol v. Beightol,* 90 N.C. App. 58, 60, 367 S.E.2d 347, 348 (1988) (citations omitted). In making an equitable distribution, the trial court must conduct a three-step analysis: (1) determining which property is marital property; (2) calculating the net value of the marital property—which is the fair market value less any encumbrance on the property; and, (3) distributing the property in an equitable manner. *Id.* at 63, 367 S.E.2d at 350. "An equal division of the marital property is mandatory, *unless* the court determines in the exercise of its discretion that such a distribution is inequitable." *Id.* (emphasis added).

The parties do not dispute that Mr. Hamby's insurance agency is marital property. However, Mr. Hamby argues that because he is an exclusive agent, representing only one company, he "has virtually no business to sell." The evidence presented at trial revealed that Mr. Hamby does not own the policies he sells and that Nationwide "ha[s] the authority to transfer those policies or do anything [with them] it wishes at its sole discretion." Thus, "with respect to [Mr. Hamby's] ability to sell or transfer [the] agency," there was no controversy.

From the record, we see that Mr. Hamby's expert witness, Mr. Blanton, valued the agency at $18,950.00 as of the date of separation. In mentioning the various valuation methods he declined to use, Mr. Blanton stated "because of the unique situation that [Mr. Hamby]'s in, and the fact that he doesn't have control over many areas, . . . you can't be sure that the future earnings will be like the past earnings." Mr. Blanton further stated that he "made the determination that . . . the agency had no right to future earnings. It couldn't sell its book of business to anyone, it couldn't assign the income stream to anyone else." Thus, Mr. Blanton "gave the adjusted book value method an 85%. And . . . gave the capitalization of earnings method a 15% to come up with a value of $18,950."

And then the company specific premium I assigned it a value of 60%. Why did I assign it a value so high? Mr. Hamby cannot sell the agency. The contract, the agency administration manual

makes specific points that he cannot sell or assign policies to anyone. The lack of ownership, the lack of control over the income stream, the fact that he is a key person, without him there is no agency, there is no earning's [sic] stream made me assign it a higher value. . . .

Conversely, Mrs. Hamby's expert witness, Mr. Whitt valued the agency at $110,000.00 as of the date of separation. Disagreeing with Mr. Blanton's valuation and methods used, Mr. Whitt stated:

> To begin with I valued the . . . Agency as a going concern. It was a going concern on date of separation. And it's my understanding when we say we're valuing at fair market value we're trying to determine *what if the entity that's being valued could have traded hands* on date of separation, date of valuation. We don't have to know there's a buyer. It's a hypothetical situation. . . . [W]e know on date of separation that the sale wasn't imminent nor was it necessary. So my purpose in valuing, and I think the appropriate purpose in valuing the agency at date of separation is what is it worth to Mr. Hamby as a going concern. So I certainly agree with the definition of a going concern, is one that we do expect it is an operating entity and we expect it to continue to operate as it has been in the most recent past.

> So there are many businesses that I valued that might not be able to trade hands that easily. . . . [However,] there can still be a value to having a practice [or agency] over and above just earning a salary.

> My approach to valuing . . . was just to determine does Mr. Hamby have, by creating this entity of an insurance agency, has he created something of value to himself. Something that has allowed him to earn an above-average amount of earnings. . . .

(Emphasis added.) Mr. Whitt went further to explain that the

> purpose of valuing a business is to say, . . . if I owned a single business, if I'm working there, what can I earn if I'm working for somebody else? Surely I'm entitled to have at least that much for the efforts of my labors. Anything I make over and above that is because, probably because I have this business entity. I've got name recognition, I've got the Nationwide name, or whatever. If [Mr. Hamby] had worked for another agency, he would've made something.

HAMBY v. HAMBY

[143 N.C. App. 635 (2001)]

And so by capitalizing in this methodology here we have capitalized his actual salary as well as any earnings that come from the business. . . .

We agree with the trial court and Mr. Whitt, in that even though Mr. Hamby cannot sell it, the agency still has value as to Mr. Hamby above and beyond a salary or the net worth of the agency's fixed assets which could be sold.

We note in the case at bar, Mr. Hamby does not argue that the trial court failed to conduct the required three step analysis for equitable distribution. Neither does Mr. Hamby argue that in conducting its analysis, the trial court itself miscalculated the net value of the agency or failed to distribute that value equitably based on expert testimony it accepted. What Mr. Hamby does argue is that the trial court erred in rejecting the expert testimony of Mr. Blanton as to the agency's valuation, instead accepting as true the testimony of Mrs. Hamby's expert, Mr. Whitt. Mr. Hamby argues Mr. Whitt's expert opinion was incompetent "at best."

" 'The decision to qualify a witness as an expert is ordinarily within the exclusive province of the trial judge or hearing officer.' " *Hall v. Hall*, 88 N.C. App. 297, 308, 363 S.E.2d 189, 196 (1987) (quoting *State ex rel. Comr. of Insurance v. N.C. Rate Bureau*, 75 N.C. App. 201, 230, 331 S.E.2d 124, 144, *disc. review denied*, 314 N.C. 547, 335 S.E.2d 319 (1985)). The record reveals that before accepting Mr. Whitt as an expert in the "area of accounting and valuation of businesses," the trial court admitted Mr. Whitt's resume into evidence, which listed Mr. Whitt's "activities as a CPA, . . . the positions [he has] held in various professional and business organizations[] . . . [and] a listing of the business valuations, litigation courses [he has] taken." Mr. Whitt also testified that he had been similarly tendered as an expert in over 100 cases. Furthermore, Mr. Hamby's attorney entered "a stipulation to [Mr. Whitt's] information."

In its order of 7 May 1999, the trial court found, in pertinent part, that:

22. Both experts [plaintiff's expert, Mr. Whitt and defendant's expert, Mr. Blanton] made assumptions in their analysis of the value of the . . . Insurance Agency that Rick Hamby cannot sell his Insurance Agency. The Court finds, based on the evidence presented . . . that the Rick Hamby Insurance Agency cannot be sold but that the Agency still has value.

23. . . . [T]he Court does not accept the methodology used by Mr. Blanton in his valuation in that Mr. Blanton used only the capitalization of earnings method and adjusted book value method or going concern method of valuation analysis. The Court finds that Mr. Blanton did not use a capitalization of excess earnings method in that Mr. Blanton testified that the capitalization of excess earnings method is appropriate to use when all net tangible and intangible assets can be clearly identified and that he was not furnished with the necessary information to identify those assets. In addition, Mr. Blanton testified that he did not use a discounted future earnings method or the public guideline company method, both of which methods would seem to the Court to have analytical value and which Mr. Whitt testified should have been used.

24. . . . The Court accepts, with one exception, the methodology used by Mr. Whitt. The Court questions Mr. Whitt's valuation based on "*Guideline Market Transactions*", because of the nature of the comparables used by Mr. Whitt in that, the sale dates occurred in 1992 and 1988 and that the location of the sales were out of the state of North Carolina. For that reason, the Court will reduce the value by $10,000. The Court finds as true and accepts all other testimony of Mr. Whitt as a valid method of valuing the Rick Hamby Insurance Agency. . . .

Thus, the trial court valued the agency at $100,000.00, $10,000.00 less than the value given by Mr. Whitt.

We hold therefore, that the record contains "evidence [which] is sufficient to permit a finding that, by reason of his specialized knowledge, [Mr. Whitt] was in a position to assist the court, as fact finder, in determining relevant facts, i.e., the value of certain marital assets," namely the insurance agency. *Hall*, 88 N.C. App. at 308, 363 S.E.2d at 196. Hence, we find the trial court's "decision was []supported by reason and [was] the result of a competent inquiry." *Beightol*, 90 N.C. App. at 60, 367 S.E.2d at 348. Further, in response to Mr. Hamby's contention that Mr. Whitt's valuation was improper because it was not based on the date of separation, we find that the record does not support Mr. Hamby's contention, in that Mr. Whitt plainly testified that his "analysis and valuation . . . [was] as of August 17, 1995[] . . . the date of separation . . . ." Accordingly, being supported by competent evidence of record, the trial court's findings of fact are conclusive on appeal. Mr. Hamby's objection is thus overruled.

**[2]** Mr. Hamby next assigns error to the trial court's finding as fact that the Nationwide Insurance Extended Earnings Plan is a Deferred Compensation Benefit Plan pursuant to N.C. Gen. Stat. § 50-20(b)(3) and as such, had a value of $179,151.90, which should be equitably distributed as it is marital property. Although Mr. Hamby admits that he stipulated in the parties' pre-trial order that his Deferred Compensation Plans were marital property, he nevertheless argues in his brief to this Court, that "[d]espite this stipulation, . . . neither of [his] retirement or deferred compensation plans with Nationwide are marital property under N.C.G.S. § 50-20 as it existed in 1995. . . . [I]t was a mistake to characterize these deferred compensation plans as marital property." Thus, Mr. Hamby thereafter argues that the trial court committed reversible error in finding the Plans to be marital property and subjecting them to equitable distribution. We disagree.

Because the applicable statute in effect at the time the parties separated plainly states that "[m]arital property *includes all vested pension, retirement, and other deferred compensation rights,*" we understand that ordinarily, Mr. Hamby's *nonvested* pension would not then be subject to equitable distribution. N.C. Gen. Stat. § 50-20(b)(1) (1995) (emphasis added). However, this Court has long held that "[t]he right to equitable distribution does not arise from the parties' common law rights and obligations as spouses, but is a statutory property right *which may be waived* by a complete property settlement." *Small v. Small,* 93 N.C. App. 614, 621, 379 S.E.2d 273, 277 (1989) (emphasis added). Accordingly, N.C. Gen. Stat. § 50-20(d) (1995) provides for "distribution of . . . marital property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties." *Id.*

> [A] married person is entitled to maintain an action for equitable distribution upon divorce if it is properly applied for *and not otherwise waived.* However, equitable distribution is not automatic. . . .
>
> *A valid separation agreement that waives rights to equitable distribution will be honored by the courts and will be binding upon the parties.* N.C.G.S. § 52-10 (1984); *Blount v. Blount,* 72 N.C. App. 193, 323 S.E.2d 738 (1984); *Blankenship v. Blankenship,* 234 N.C. 162, 66 S.E.2d 680 (1951).

*Hagler v. Hagler,* 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987) (emphasis added).

In the present case, there is no dispute as to whether the parties had a signed and binding pre-trial agreement which the trial court incorporated into its pre-trial order. Therefore, we reject Mr. Hamby's argument that "neither of [his] retirement or deferred compensation plans with Nationwide are marital property," and subject to equitable distribution. We hold then that by the parties' pre-trial agreement, Mr. Hamby effectively waived his right to a trial court's later determination of whether the Plans were marital property and subject to the equitable distribution statutory provisions of N.C. Gen. Stat. § 50-20. *See Prevatte v. Prevatte*, 104 N.C. App. 777, 781, 411 S.E.2d 386, 388 (1991). Furthermore, by agreeing that the Plans were marital property and thereby subject to equitable distribution, Mr. Hamby also waived his right to retain, as separate property, that portion of Deferred Compensation which was not yet vested as of the date of separation. *Id.*

We find *Prevatte, supra,* analogous. In that case, this Court held:

> [W]e agree that the agreement released all the wife's property rights which arose out of the marriage and also operated to release her statutory right to equitable distribution. We hold that the antenuptial agreement was a valid bar to wife's claim and the trial court erred in concluding the property acquired during the marriage was subject to equitable distribution.

*Id.* at 782, 411 S.E.2d at 389. Thus, just as in *Prevatte* where the wife was able to sign away her statutory right to equitable distribution, we believe that Mr. Hamby was able to sign away his right to keeping separate property separate. Therefore, it matters not that pursuant to statutory authority in place at the time of separation (17 August 1995), "[t]he expectation of nonvested pension, retirement, or other deferred compensation rights [was to] be considered separate property." N.C. Gen. Stat. § 50-20(b)(2).

The record reflects that Ms. Riggs, "a representative of Nationwide Insurance testified that she was familiar with [Mr. Hamby's] rights concerning . . . [his] Extended Earnings Plan," and she further testified as to the amounts Mr. Hamby would have been entitled to receive had he "die[d], retire[d], or [been] otherwise severed from service with Nationwide" on 31 December 1994 and 31 December 1995. Ms. Riggs went on to testify as to the amount to which Mr. Hamby would have been entitled as of 31 December 1994 and 31 December 1995, stating that there was no way to calculate the

exact amount as of the date of the parties' separation. Subsequently, in its finding of fact number 27, the trial court found that:

> Pursuant to the Pre-Trial Order the parties have stipulated that [Mr. Hamby's] Extended Earnings [Plan] was marital property. . . .
>
> [Moreover,] the Nationwide Insurance Extended Earnings Plan is a deferred compensation benefit plan under the provisions of North Carolina General Statutes § 50-20(b)(3) and that the same as of the date of separation had a value of **$179,151.90** and is marital property.

(Emphasis in original.) Additionally, the trial court set out its method of calculating the value of the Extended Earnings Plan to Mr. Hamby as of the date of separation. By averaging the end-of-year Extended Earnings' amounts of $167,450.00 for 1994 and $186,102.00 for 1995, the trial court was able to calculate a relatively accurate amount that the Plan increased per day ($51.10), and thereby calculate what the Plan was worth as of 17 August 1995, the parties' date of separation. Thus, we find the record supports the trial court's findings as to the valuation of Mr. Hamby's Extended Earnings Plan. Again, we are reminded that if there is *any* competent evidence of record to support the trial court's findings, those findings are conclusive on appeal. *Beightol*, 90 N.C. App. 58, 60, 367 S.E.2d 347, 348. Having so held, we find no error in the trial court's equitable distribution of such asset. Further, we find no merit in Mr. Hamby's argument that "it is impossible with any degree of accuracy to calculate the value of extended earnings."

**[3]** Next, Mr. Hamby assigns error to the trial court's equitable distribution of his Deferred Income Compensation Credits in the amount of $128,955.00, on the basis that there is not competent evidence of record to support the valuation finding of fact. We have already held that the Deferred Income Compensation Plan is marital property pursuant to the parties' pretrial agreement. Therefore, as in the earlier argument regarding the Extended Earnings Plan, we need not address Mr. Hamby's contention as to whether his Income Compensation Credits had vested as of the parties' date of separation.

As to his argument that the trial court erred in its valuation of the Plan, Mr. Hamby does not contend that the Court's "March 1, 1995 statement [figures], which is for the period ending December 31, 1994 . . . [or] the March 1, 1996 statement [figures], which is for the period

HAMBY v. HAMBY

[143 N.C. App. 635 (2001)]

ending December 31, 1995" are incorrect. Instead, Mr. Hamby simply argues that because neither the documents nor any witness gave a specific figure for the Deferred Compensation *as of the date of separation*, the trial court erred in attempting to calculate one. We find that if we were to follow Mr. Hamby's logic, a trial court could never calculate the equitable amount of any asset for which a document or an expert witness was unable to positively give an exact figure as of the date of separation. This Court, like the trial court below, refuses to accept Mr. Hamby's logic. We believe the trial court's simple averaging of the figures resulted in an equitable figure for the purposes of distribution. We hold that the record supports the trial court's findings and conclusions as to this issue.

[4] Finally, Mr. Hamby assigns error to the trial court's finding that the parties' Isuzu Trooper automobile was the separate property of Mrs. Hamby. In the parties' 9 October 1995 Separation Agreement, under the heading of "Exclusive Possession," it was stated that:

> The Husband shall have as his sole and separate property that certain 1995 Isuzu Rodeo . . . . The Husband agrees to indemnify and hold the Wife harmless for the payment of any obligations on said vehicle, pursuant to the terms of this conveyance. *The Wife shall have as her sole and separate property that certain 1995 Isuzu Trooper LS (Limited), presently used by the Wife*, with [sic] the Husband shall assume all indebtedness on said vehicle including taxes, tag, and title, and maintenance on said vehicle during the one (1) year separation agreement. The Husband further agrees to indemnify and hold the Wife harmless from any payments on the subject vehicle pursuant to the terms of this agreement. . . .

(Emphasis added.)

In its order, the trial court found that:

> While there is language in said article referring to action to be taken by the Husband during the one (1) year separation agreement . . . said language agrees to the Husband's obligation to pay taxes, tag, title and maintenance on said vehicle during the one (1) year separation agreement and does not limit the prior language granting the Isuzu to the Wife "as her sole and separate property".

Therefore, the trial court held the automobile to be Mrs. Hamby's separate property. We agree.

The law has long been that where the plain language of a statute (or contract) is unambiguous on its face, the court is bound by the clear meaning. *Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 82 (1995). "The most common rule of construction used by the courts is to 'gather the intention of the parties from the four corners of the instrument.'" *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 462, 490 S.E.2d 593, 597 (1997) (quoting Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 10-36 (4th ed. 1994)). Thus, we hold that the record supports the trial court's finding that

> the October 16, 1996 Consent Judgment of the parties . . . provides that [Mr. Hamby] shall immediately execute the title to the 1995 Isuzu Trooper to [Mrs. Hamby] subject to the terms and conditions of the parties' separation agreement and there is no mention made in any of said documents that the Isuzu shall be subject to later division. . . .

Mr. Hamby's assignment of error is therefore overruled.

Having found that the trial court's findings of fact are supported by competent evidence in the record, and that its conclusions of law are supported by the findings of fact, the trial court's orders are,

Affirmed.

Chief Judge EAGLES and Judge CAMPBELL concur.