STEVE McINTYRE, Plaintiff-Appellant v. VICKI McINTYRE, Defendant-Appellee

No. COA07-235

(Filed 15 January 2008)

**1. Appeal and Error— appealability—denial of partial summary judgment—trial and judgment**

The denial of partial summary judgment was not addressed in an appeal after a trial and a judgment on the merits.

**2. Husband and Wife— prenuptial agreement—waiver of equitable distribution—ambiguous**

A prenuptial agreement was not interpreted as a matter of law on the question of whether it waived equitable distribution where the agreement was ambiguous.

**3. Husband and Wife— prenuptial agreement—equitable distribution—free traders**

There was competent evidence, even though there was evidence to the contrary, to support the trial court's findings that a prenuptial agreement allowed plaintiff and defendant to be "free traders," but did not bar defendant's equitable distribution claim.

**4. Husband and Wife— prenuptial agreement—interpretation—reliance on evidence not admitted—no prejudice**

There was no prejudice in an action involving a prenuptial agreement where the court referred to a form book not admitted into evidence when discussing the language of the agreement. The reference was not included in the findings and conclusions, which were supported by competent evidence, and the court could have drawn the same comparison by relying on cases involving agreements with similar language.

**5. Divorce— prenuptial agreement—classification of property as marital**

The trial court did not err in its classification of property as marital in an action involving the interpretation of a prenuptial agreement.

Judge TYSON concurring in part and dissenting in part.

Appeal by Plaintiff from order entered 27 June 2000 by Judge Victoria L. Roemer in District Court, Forsyth County; and from order entered 31 July 2001 and judgment entered 3 December 2004 by Judge Chester C. Davis in District Court, Forsyth County. Heard in the Court of Appeals 19 September 2007.

*Tash & Kurtz, PLLC, by Jon B. Kurtz, for Plaintiff-Appellant.*

*Bell, Davis & Pitt, P.A., by Robin J. Stinson, for Defendant-Appellee.*

McGEE, Judge.

Steve McIntyre (Plaintiff) and Vicki McIntyre (Defendant) were married on 17 July 1986. A number of hours before their wedding, Plaintiff and Defendant executed a prenuptial agreement (the Agreement) that provided, in pertinent part:

THAT WHEREAS, said parties have agreed to be married, each to the other; and WHEREAS said parties each own property; and WHEREAS said parties, deeming the same to be just and fair to the other party, have mutually agreed as herein set out:

NOW, THEREFORE, in consideration of said contemplated marriage and of the covenants hereby entered into, the parties mutually agree as follows:

FIRST: STEVE A. McINTYRE hereby releases, renounces and forever quitclaims to VICKIE [sic] GAIL TRUELL all right, title, interest, claim and demand whatsoever including all marital rights in the real estate and personal property of VICKIE [sic] GAIL TRUELL and agrees that VICKIE [sic] GAIL TRUELL may at all times hereafter purchase, acquire, own[,] hold, possess, encumber, dispose of and convey any and all kinds and classes of property, both real and personal, as though still unmarried and without the consent, joinder or interference of the party of STEVE A. McINTYRE.

SECOND: VICKIE [sic] GAIL TRUELL hereby releases, renounces and forever quitclaims to STEVE A. McINTYRE all right, title, interest, claim and demand whatsoever including all marital rights in the real estate and personal property of STEVE A. McINTYRE and agrees that STEVE A. McINTYRE may at all times hereafter purchase, acquire, own, hold, possess, encumber, dispose of and convey any and all kinds and classes of property, both real and personal, as though still unmarried and without the consent, joinder or interference of VICKIE [sic] GAIL TRUELL.

Plaintiff filed a complaint in Forsyth County District Court on 24 August 1999 seeking a divorce from bed and board and equitable distribution of the marital estate. Defendant filed an answer and counterclaim on 25 October 1999 seeking post-separation support, alimony, equitable distribution of the marital estate, and other relief. Plaintiff replied on 4 November 1999 and pled the Agreement as an affirmative defense to Defendant's counterclaim for equitable distribution.

Plaintiff moved for partial summary judgment as to Defendant's counterclaim for equitable distribution on 27 April 2000, arguing that the Agreement barred Defendant's claim. Defendant responded to Plaintiff's motion and claimed that the Agreement was invalid for reasons of undue influence, duress, unconscionability, and lack of adequate disclosure. The trial court denied Plaintiff's motion for partial summary judgment on 27 June 2000. Plaintiff dismissed his own claim for equitable distribution on 1 March 2001. Defendant amended her answer and counterclaim on 20 April 2001 to address certain issues regarding the validity and enforceability of the Agreement.

The case proceeded to trial on 6 July 2001 on the issues of the validity of the Agreement and its effect on Defendant's claim for equitable distribution. The trial court entered an order on 31 July 2001 concluding, *inter alia*, that: (1) Defendant was not unduly influenced,

McINTYRE v. McINTYRE

[188 N.C. App. 26 (2008)]

coerced, or under duress when she executed the Agreement; (2) the Agreement was valid as between the parties; and (3) the terms of the Agreement did not waive either party's right to equitable distribution of marital property. The trial court held equitable distribution hearings on 20 April 2004, 17-18 May 2004, and 21 June 2004, and entered an equitable distribution judgment and order on 3 December 2004. Both parties appealed various orders of the trial court, but our Court dismissed the appeals as interlocutory due to an outstanding issue concerning alimony. *See McIntyre v. McIntyre*, 175 N.C. App. 558, 623 S.E.2d 828 (2006).

The trial court entered an alimony order on 6 October 2006. With no issues remaining before the trial court, Plaintiff now appeals: (1) the trial court's order of 27 June 2000 denying Plaintiff's motion for partial summary judgment; (2) the trial court's order of 31 July 2001 finding the Agreement valid but not preclusive with respect to Defendant's request for equitable distribution; and (3) the trial court's order of 3 December 2004 ordering equitable distribution of the parties' marital property. For the reasons stated below, we affirm.

I.

[1] Plaintiff first argues that the trial court erred by denying his motion for partial summary judgment to dismiss Defendant's claim for equitable distribution. This Court is unable to review Plaintiff's argument. Our Supreme Court has previously held:

> Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.
>
>     . . . To grant a review of the denial of the summary judgment motion after a final judgment on the merits . . . would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). *See also WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 252, 644 S.E.2d

245, 246-47 (2007) (citing *Harris* for the proposition that "[t]his Court cannot consider an appeal of denial of [a] summary judgment motion [once] a final judgment on the merits has been made"). Therefore, we do not address Plaintiff's first argument.

## II.

**[2]** Plaintiff next argues the trial court erred by allowing the equitable distribution of property acquired by the parties during their marriage. Plaintiff argues that the Agreement waived the parties' rights to equitable distribution, and that the trial court erred by interpreting the Agreement to the contrary. We disagree.

North Carolina law provides that upon separation, a party to a marriage may institute an action for equitable distribution of the marital estate. *See* N.C. Gen. Stat. § 50-20 (2005) (providing procedures governing equitable distribution of marital and divisible property). However, "parties to a marriage may forego equitable distribution and decide themselves how their marital estate will be divided upon divorce." *Hagler v. Hagler*, 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987). Under N.C. Gen. Stat. § 50-20(d) (2005), "[b]efore, during or after marriage the parties may by written agreement . . . provide for distribution of the marital property or divisible property, or both, in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties." Likewise, under N.C. Gen. Stat. § 52-10(a) (2005):

> Contracts between husband and wife not inconsistent with public policy are valid, and any persons of full age about to be married and married persons may, with or without a valuable consideration, release and quitclaim such rights which they might respectively acquire or may have acquired by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estate so released.

Our Court has previously noted that "[a]ntenuptial contracts are not against public policy and should be enforced as written." *Harden v. Bank*, 28 N.C. App. 75, 78, 220 S.E.2d 136, 138 (1975).[1]

---

1. The Uniform Premarital Agreement Act (UPAA), N.C. Gen. Stat. § 52B-1 et seq. (2005), provides specific rules governing premarital agreements. The UPAA became effective on 1 July 1987 and only applies to premarital agreements executed on or after that date. *See* 1987 N.C. Sess. Laws ch. 473, § 3. The UPAA is therefore not applicable in the current case.

McINTYRE v. McINTYRE

[188 N.C. App. 26 (2008)]

Premarital agreements are contracts, and thus are to be construed in the same manner as other contracts. *See Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989), *disc. review denied*, 326 N.C. 482, 392 S.E.2d 90 (1990) ("principles of construction applicable to contracts also apply to premarital agreements"). Under well-settled principles of legal construction, if "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Hagler*, 319 N.C. at 294, 354 S.E.2d at 234. Further, "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (internal citations omitted). However, if the language of a contract "is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993).

A.

In the present case, Plaintiff argues that the Agreement constitutes a clear and unambiguous waiver of the parties' rights to equitable distribution. In support of this contention, Plaintiff first notes that our Supreme Court has previously recognized that "the very existence of [a prenuptial or postnuptial agreement] evinces an intention by the parties to determine for themselves what their property division should be and what their future relationship is to be, rather than to leave these decisions to a court of law." *Hagler*, 319 N.C. at 293, 354 S.E.2d at 233. Against this backdrop, Plaintiff relies on *Hagler* to demonstrate that the Agreement does, in fact, explicitly preclude equitable distribution. In *Hagler*, a husband and wife entered into a separation agreement that dealt with the marital residence, alimony, child support and custody, acquisition of property, and also provided for distribution of existing property and obligations. *Id.* at 288, 293, 354 S.E.2d at 231, 233-34. In addition, the separation agreement contained the following reciprocal release provision:

[Each spouse] does hereby release and relinquish unto [the other spouse] . . . all right of future support . . . and all right of [dower or courtesy], inheritance, descent and distribution, and any and all other rights arising out of the marriage relation in and to any and all property now owned by the [other spouse], or which may be hereafter acquired by [the other spouse][.]

*Id.* at 288, 354 S.E.2d at 231. The husband pled the separation agreement as a bar to the wife's request for equitable distribution of the marital estate. *Id.* The trial court granted summary judgment for the husband, finding that the separation agreement was a bar to equitable distribution. *Id.*

On appeal, our Supreme Court noted that since the language of the release provision "does not refer specifically to the right of equitable distribution, we must consider whether the language nonetheless sufficiently encompasses this right to be a valid release of it." *Id.* at 291, 354 S.E.2d at 232. Noting the breadth of the separation agreement, the Court "conclude[d] from [its] reading of the entire agreement that the parties intended to completely dispose of the marital estate and effectuate a complete waiver of claims by one party against the other." *Id.* at 293, 354 S.E.2d at 234. Focusing specifically on the language of the release provision, the Court found that the parties' waiver of "all other rights arising out of the marriage relation" clearly encompassed the right to equitable distribution. Given that the separation agreement had already covered rights such as support, dower, inheritance, descent, and distribution, it was unclear what rights other than equitable distribution the parties could have intended to come within the "all other rights" waiver. *Id.* at 293-94, 354 S.E.2d at 234. The Court therefore concluded that the separation agreement clearly and unambiguously "disposed of the parties' property rights arising out of the marriage and thus acts as a bar to equitable distribution." *Id.* at 295, 354 S.E.2d at 235.

In the present case, Plaintiff notes the similarities between the release provision in *Hagler* and the Agreement signed by Plaintiff and Defendant. As in *Hagler*, the Agreement in the present case specifically provides that each party "releases" certain rights, including "all marital rights in the real estate and personal property" of the other spouse. Plaintiff maintains that, under *Hagler*, such language clearly and unambiguously encompasses the parties' rights to equitable distribution.

Like Plaintiff, Defendant also maintains that the Agreement is clear and unambiguous. However, Defendant claims that, rather than constituting an equitable distribution waiver, the Agreement is a mere "free trader" agreement that allowed each spouse to buy and sell property without the consent or interference of the other during marriage. Defendant first recognizes that N.C.G.S. § 50-20(d) allows future spouses to waive their rights to equitable distribution, but notes that the Agreement in the present case does not contain an

express waiver of equitable distribution rights. According to Defendant, under *Hagler*, if a prenuptial agreement does not expressly waive equitable distribution rights, then the parties may still waive such rights impliedly, so long as the agreement contains language constituting a complete relinquishment of all property rights following marriage. *See Hagler*, 319 N.C. at 290-91, 354 S.E.2d at 232 (stating that because the parties' separation agreement did not specifically refer to equitable distribution rights, the Court "must consider whether the language nonetheless sufficiently encompasses this right to be a valid release of it"); *McKissick v. McKissick*, 129 N.C. App. 252, 255, 497 S.E.2d 711, 713 (1998) ("It is only pre-marital agreements that fully dispose of the parties' property rights that bar subsequent actions under the equitable distribution statute."). Defendant contends that the Agreement in the present case did not fully dispose of the parties' property rights, and thus did not impliedly waive the parties' equitable distribution rights.

Defendant notes that the separation agreement in *Hagler* was a comprehensive, fifteen-paragraph settlement that addressed alimony, child support, the marital residence, property acquisition, and distribution of existing property. *Hagler*, 319 N.C. at 293, 354 S.E.2d at 233-34. Thus, because the agreement was "a comprehensive settlement . . . dealing with all aspects of the marital estate, including the division of property," the additional language waiving "all other rights arising out of the marriage relationship" indicated that the parties intended "to completely dispose of the marital estate and effectuate a complete waiver of claims by one party against the other," including claims for equitable distribution. *Id.* at 293, 354 S.E.2d at 233-34. *See also Anderson v. Anderson*, 145 N.C. App. 453, 458-59, 550 S.E.2d 266, 270 (2001) (holding that where a separation agreement expressly purported to "settle by agreement all of [the parties'] marital affairs with respect to property," and did in fact "provide[] a section expressly for the division of property," the agreement "serve[d] as the sole and complete division of the marital estate" and precluded a claim for equitable distribution). In contrast, according to Defendant, the Agreement in the present case is a short document that contains "free-trader" language and does not actually distribute any property between the parties. As such, with no express waiver of equitable distribution and no actual division of property, the Agreement merely set out rules regarding how the parties were able to own, buy, and sell property once married. Therefore, Defendant argues that the presumption in *Hagler*—that "the very existence of [a prenuptial or postnuptial agreement] evinces an intention by the par-

ties to determine for themselves what their property division should be"—should not apply in the present case. *See Hagler*, 319 N.C. at 293, 354 S.E.2d at 233.

Finally, Defendant notes that the Agreement only references "marital rights in *the* real estate and personal property" of each spouse (emphasis added). According to Defendant, this language was only meant to encompass rights in property owned by the parties at the time they entered into the Agreement. If the parties had intended for the Agreement to constitute a waiver of rights in property acquired during marriage, they would have expressly extended its coverage to property later acquired by the parties. In support of this argument, Defendant notes that in prior cases finding equitable distribution barred by a prenuptial or postnuptial agreement, such agreements clearly referenced property to be acquired. *See, e.g., Stewart v. Stewart*, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000) (finding equitable distribution precluded based on agreement in which each party "forever waive[d], release[d] and relinquishe[d] any right or claim that he or she now has, or may hereafter acquire, pursuant to the provisions of [Chapter 50 of the General Statutes]"); *Prevatte v. Prevatte*, 104 N.C. App. 777, 781-82, 411 S.E.2d 386, 389 (1991) (finding equitable distribution precluded based on agreement where each party waived all rights or claims regarding "the property, real, personal and mixed, now owned, or hereafter acquired by the [other party]"); *Hagler*, 319 N.C. at 288, 354 S.E.2d at 231 (finding equitable distribution precluded based on agreement in which each party waived "all other rights arising out of the marriage relation in and to any and all property now owned by the [other spouse], or which may be hereafter acquired by [the other spouse]").

As set out above, if "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Hagler*, 319 N.C. at 294, 354 S.E.2d at 234. However, if the language of a contract "is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *Glover*, 109 N.C. App. at 456, 428 S.E.2d at 209. An ambiguity exists where the terms of the contract are reasonably susceptible to either of the differing interpretations proffered by the parties. *Id.* Further, " '[t]he fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.' " *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988)). While both Plaintiff and Defendant assert that the language of the

Agreement is clearly and unambiguously in their favor, we find that both parties have offered reasonable interpretations of the Agreement. It is true that the Agreement does state that the parties waive "all marital rights" in each others' property. However, unlike other agreements that have been found to waive equitable distribution rights, the Agreement in the present case does not specifically reference property that might be acquired during marriage, nor does it contain an express waiver of equitable distribution rights. Further, the Agreement does not otherwise distribute property between the parties in the event of divorce. While there is some reasonable indication that the parties intended the Agreement to preclude equitable distribution, the Agreement may also reasonably be interpreted as a mere "free trader" agreement. We find the Agreement is ambiguous, and therefore do not interpret the Agreement as a matter of law.

B.

[3] Due to the ambiguity of the Agreement, its interpretation was properly for the finder of fact. *Glover*, 109 N.C. App. at 456, 428 S.E.2d at 209. Our review is therefore limited to whether there was competent evidence to support the trial court's findings of fact, and whether the trial court's conclusions of law were proper in light of those facts. *Lee v. Lee*, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004).

Plaintiff's evidence at trial tended to demonstrate that the parties may have intended for the Agreement to bar equitable distribution. Plaintiff testified that before his marriage to Defendant, Defendant had agreed to sign a prenuptial agreement to protect both parties' financial interests. Plaintiff then retained an attorney, Charles Harp (Mr. Harp), to draft the Agreement. Plaintiff told Mr. Harp that he wanted to protect his financial interests after marriage in case of divorce, and that he wanted to be able to buy, sell, and trade property as if single during the marriage. Mr. Harp testified that he had only prepared three prenuptial agreements during his entire legal career, and that he "probably" prepared the prenuptial agreement by using language from a Douglas Forms book. Mr. Harp also testified that he had never drafted a "free-trader" document during his legal career. However, neither Plaintiff nor Mr. Harp could recall if they had ever specifically discussed whether the prenuptial agreement was to contain language barring equitable distribution.

Further, Plaintiff argues that the trial court ignored the fact that after he and Defendant separated, they entered into a separation agreement containing a "free-trader provision." According to Plain-

tiff, had the original Agreement truly been a mere free-trader agreement, there would have been no need for the parties to enter into another free-trader agreement after they separated.

Defendant's evidence at trial tended to show that Plaintiff presented Defendant with the Agreement just hours before the wedding and told Defendant that the wedding would be cancelled unless she signed the document. Defendant testified that she did not understand the document and signed it without reading it. Defendant and Plaintiff never discussed equitable distribution. Defendant maintains, however, that the trial court properly considered the language of the Agreement as clear evidence that the Agreement was a mere "free-trader" agreement, given that the Agreement never specifically referenced equitable distribution rights, did not otherwise dispose of property in the event of divorce, and did not reference the parties' rights to property acquired during marriage. Finally, Defendant notes that in Plaintiff's original August 1999 complaint for divorce from bed and board, Plaintiff also sought equitable distribution of the marital estate. Plaintiff did not dismiss his own equitable distribution claim until March 2001, after having pled the Agreement as a bar to Defendant's counterclaim for equitable distribution. Defendant argues that the fact that Plaintiff originally sought equitable distribution demonstrates that he too believed that equitable distribution was not barred by the Agreement.

Based on this evidence, and after its own review of the Agreement's language, the trial court found, in pertinent part:

XVII. The Court finds that the Plaintiff, at the time of the execution of the Agreement, desired to protect his financial interest and retain the ability to buy and sell property without the consent or interference of the Defendant.

XVIII. The Court finds that the language set out in [the Agreement] does allow the Plaintiff to conduct himself as a "free trader" and allows him, in fact, to do exactly what he desired, that is, to buy and sell property without the consent or interference of the Defendant.

XIX. The Court finds that [the Agreement] specifically releases all right, title and interest in *the* real estate owned by Plaintiff at the time of his marriage to the Defendant on July 17, 1986.

XX. The Court finds that the provision of [the Agreement] which referred to "*the*" real estate and personal property of the

McINTYRE v. McINTYRE

[188 N.C. App. 26 (2008)]

parties refers to property owned at the time of the parties' marriage and does not apply to property acquired during the course of the parties' marriage.

XXI. The Court therefore finds that although [the Agreement] is valid, the terms of the Agreement distinguish the property that the parties owned at the time of their marriage rather than property acquired after their marriage and that further, the document simply provided that the Plaintiff and the Defendant were "free traders".

XXII. The Court finds that [the Agreement] does not bar the Defendant's claim for Equitable Distribution (emphases in original).

While Plaintiff certainly introduced evidence to the contrary, we find that the trial court's findings of fact are supported by competent evidence in the record. Based on Plaintiff's stated intentions regarding the creation of the Agreement, his discussions with Mr. Harp, and the actual language of the Agreement, the trial court could properly find that the Agreement constituted a "free trader" agreement that did not waive the parties' rights to equitable distribution.

Based on these findings of fact, the trial court concluded, in pertinent part:

III. [T]he terms and conditions of [the Agreement] did not waive either party's right to an Equitable Distribution of property nor does said Agreement determine the property interest of the parties as to property acquired following their marriage on July 17, 1986.

We find that the trial court's conclusion was proper in light of its findings of fact. Therefore, the trial court did not err by allowing equitable distribution to proceed, as the Agreement did not waive the parties' claims to equitable distribution.

III.

[4] Plaintiff next argues the trial court erred by relying on certain evidence not properly before the trial court. When rendering its decision regarding the interpretation of the Agreement at a 13 July 2001 hearing, the trial court stated:

The Court having looked at other Douglas Forms found a prenuptial agreement wherein the parties gave up, released, re-

nounced and quitclaim—they use all the terms—but, anyway, all rights to real property, personal property. In this case, they did the year's allowance and, more importantly—now I quote—"as to property now owned by him and property hereafter acquired," end quotation.

The Court notes that that language is not present in the prenuptial agreement that I have just read. The Court further finds that the word "the" is the most significant word in the prenuptial agreement; and I, therefore, interpret the words "the real estate and personal property of [Plaintiff] to mean that property that he owned at the time of the marriage.

The Court, therefore, finds the prenuptial agreement is valid. The Court has stated its interpretation of it.

At trial, Mr. Harp testified that he "probably prepared [the Agreement] from Douglas Forms, just using the form book." Mr. Harp was never certain whether he used a Douglas Forms book, nor did he testify as to what edition of the Douglas Forms book he might have used. Further, no Douglas Forms book was admitted into evidence. Plaintiff argues that the trial court improperly relied on the Douglas Forms book because: (1) no such book was admitted into evidence; (2) the book was irrelevant because Mr. Harp stated that he was not certain whether he relied on a Douglas Forms book; and (3) the book was irrelevant because Mr. Harp could not identify the particular version of the Douglas Forms book on which he might have relied, and the trial court did not state the version of the Douglas Forms book on which it relied.

Assuming *arguendo* that the trial court erred by relying on a Douglas Forms book, Plaintiff must still demonstrate that he was prejudiced as a result of the trial court's actions. *See* N.C. Gen. Stat. § 1A-1, Rule 61 (2005) ("No error in . . . the admission . . . of evidence and no error or defect in any ruling or order . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right."). Plaintiff argues that he was prejudiced by the trial court's reliance on a Douglas Forms book because the trial court admittedly relied upon the allegedly incompetent evidence to interpret the Agreement. We disagree. While the trial court did reference a Douglas Forms prenuptial agreement to emphasize the lack of "hereafter acquired" language in the Agreement in the present case, the trial court could have drawn the same comparison by relying on *Hagler* and other cases interpreting prenuptial or post-

nuptial agreements containing similar language. Further, when making the findings of fact and conclusions of law in its 31 July 2001 order, the trial court never referenced a Douglas Forms book. This demonstrates that the trial court believed it had sufficient competent evidence from other sources to support its findings of fact. As set out in Part II, we have reviewed the trial court's findings of fact and have held that they are supported by competent evidence that does not include a Douglas Forms book. Therefore, Plaintiff has not demonstrated that he was prejudiced by the trial court's allegedly improper reliance on a Douglas Forms book.

## IV.

[5] Finally, Plaintiff argues that the trial court erred as a matter of law and abused its discretion by classifying Plaintiff's separate property as marital property, where the Agreement provided that such property was Plaintiff's separate property. Plaintiff argues that because the trial court in its 31 July 2001 order erroneously found that the parties did not waive their equitable distribution rights, the trial court also erred by actually carrying out the equitable distribution of the parties' marital property in its 3 December 2004 order. Because we find that the trial court did not err in its interpretation of the Agreement, Plaintiff's assignment of error is overruled.

In light of the foregoing, we do not address Defendant's cross-assignments of error.

Affirmed.

Judge ELMORE concurs.

Judge TYSON concurs in part and dissents in part with a separate opinion.

TYSON, Judge concurring in part and dissenting in part.

The majority's opinion holds: (1) this Court cannot consider plaintiff's first argument challenging denial of summary judgment because a final judgment on the merits has been made; (2) the trial court did not err by allowing equitable distribution to proceed; (3) plaintiff failed to demonstrate he was prejudiced by the trial court's allegedly improper reliance on a Douglas Forms book; and (4) the trial court did not err by classifying plaintiff's separate property as marital property. I concur in that portion of the majority's opinion

holding this Court cannot review a denial of a motion for summary judgment once a final judgment on the merits has been entered.

I disagree with the majority's holding that the trial court properly allowed equitable distribution to proceed in contravention to a valid prenuptial agreement and properly classified plaintiff's separate property as marital property. I vote to reverse and respectfully dissent.

## I. Analysis

Plaintiff argues the parties' prenuptial agreement waived the parties' rights to equitable distribution and the trial court erred when it allowed equitable distribution and classified property acquired by the parties individually during their marriage as marital property. I agree.

The parties' prenuptial agreement expressly states that each party "releases . . . *all marital rights* in the real estate and personal property . . . ." of the other spouse. (Emphasis supplied). The trial court specifically and correctly concluded: (1) defendant was not unduly influenced, coerced, or under duress when she signed the prenuptial agreement and (2) the prenuptial agreement was valid. Defendant did not cross-appeal any error in either of these conclusions and does not argue the invalidity of either conclusion.

"[T]he very existence of the [prenuptial] agreement evinces an intention by the parties to determine for themselves what their property division should be . . . rather than to leave th[is] decision[] to a court of law." *Hagler v. Hagler*, 319 N.C. 287, 293, 354 S.E.2d 228, 233 (1987). "The value of such agreement[] lies in the ability to have [it] enforced in the courts." *Id.* at 295, 354 S.E.2d at 235.

"Premarital agreements, like all contracts, must be interpreted according to the intent of the parties." *Howell v. Landry*, 96 N.C. App. 516, 532, 386 S.E.2d 610, 619 (1989), *disc. rev. denied*, 326 N.C. 482, 392 S.E.2d 90 (1990).

When the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court.

. . . .

It is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.

McINTYRE v. McINTYRE

[188 N.C. App. 26 (2008)]

*Hagler*, 319 N.C. at 294, 354 S.E.2d at 234 (internal citations and quotation omitted).

The unambiguous language of the parties' prenuptial agreement clearly established the parties' intention to fully resolve "all marital rights in the real estate and personal property . . . ."

> Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract.

*Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (internal quotations omitted), *cert. denied*, 359 N.C. 631, 616 S.E.2d 234 (2005).

"[T]he object of all interpretation is to arrive at the intent and purpose expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose unless at variance with some rule of law or contrary to public policy." *Bank v. Corl*, 225 N.C. 96, 102, 33 S.E.2d 613, 616 (1945). "Courts are not at liberty to rewrite contracts for the parties. We are not their guardians, but the interpreters of their words. We must, therefore, determine what they meant by what they have said-what their contract is, and not what it should have been." *Penn v. Insurance Co.*, 160 N.C. 399, 402, 76 S.E. 262, 263 (1912).

The language the parties used in the prenuptial agreement is clear and unambiguous. The trial court erred when it concluded the prenuptial agreement did not waive "all marital rights . . . ." of the parties and allowed an equitable distribution of property.

## II. Conclusion

The parties' intent must be gleaned from the four corners of the unambiguous and valid written agreement. *Corl*, 225 N.C. at 102, 33 S.E.2d at 616. The plain and unambiguous language of the prenuptial agreement entered into by the parties fully disposed of "all marital rights . . . ." and bars equitable distribution. This Court cannot under the guise of judicial construction divine a different intent than that shown by the express terms of the binding agreement. *Id.*

I vote to reverse the trial court's 31 July 2001 judgment that found the parties did not waive "all marital rights . . . ." to an equitable dis-

tribution of their property and to vacate the trial court's equitable distribution order entered 3 December 2004. I respectfully dissent.