CAROLYN MATHIS PARKER, Plaintiff v. BRENT HYATT, Individually, Defendant

No. COA08-907

(Filed 21 April 2009)

## 1. Appeal and Error— appealability—summary judgment— interlocutory order—qualified immunity

Although defendant's appeal from the grant of summary judgment in a false imprisonment case was an appeal from an interlocutory order, the substantial right of qualified immunity was at issue and thus the case was subject to immediate appeal.

## 2. False Imprisonment; Immunity— wildlife officer stopping vehicle for suspected DWI —qualified immunity

The trial court erred by granting summary judgment in favor of plaintiff in a false imprisonment case arising out of defendant wildlife officer stopping plaintiff's vehicle for suspected driving while impaired, based on defendant's affirmative defense of qualified immunity, and the case is reversed and remanded because defendant was authorized to arrest plaintiff under N.C.G.S. § 113-136(d), pursuant to the terms of N.C.G.S. § 15A-401(b)(1), since the officer had probable cause to believe that a criminal offense occurred in his presence which constituted a threat to public peace and order tending to subvert the authority of the State if ignored.

Appeal by defendant from an order entered 2 June 2008 by Judge Richard K. Walker in Macon County District Court. Heard in the Court of Appeals 27 January 2009.

*Williams & Cassady, P.L.L.C., by Rich Cassady, for plaintiff-appellee.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General C. Norman Young, Jr., for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Wildlife Officer appeals from a grant of summary judgment for plaintiff as to liability by claiming that he is entitled to qualified immunity, a complete bar to plaintiff's recovery. After careful review, we reverse and remand.

## Background

On 3 November 2006, Brent Hyatt ("defendant") was employed by the North Carolina Wildlife Resources Commission as a sworn Wildlife Officer.[1] That evening, defendant and fellow Wildlife Officer Andrew Helton ("Officer Helton") were patrolling the area near N.C. Highway 28 ("N.C. 28") for unauthorized night deer hunting as well as fishing activity near the Little Tennessee River in Macon County, North Carolina. At around 10:00 p.m., defendant and Officer Helton were at the intersection of Telico Road and N.C. 28 when a minivan turned onto N.C. 28 in front of them traveling in the same direction. Defendant approximated the minivan's speed at 25 miles per hour in a 55 mile per hour zone and observed the minivan cross the center line several times over the course of a mile or less. Defendant told Officer Helton that he believed the driver of the minivan was impaired. Defendant "was concerned that this vehicle might cause a wreck and hurt someone if not stopped . . ." and he therefore decided to stop it. Officer Helton "called the tag" and defendant turned on his vehicle's blue lights.

The minivan pulled over and defendant determined that the driver was Carolyn Parker ("plaintiff"). Defendant asked plaintiff for her license, which she stated she did not have. Plaintiff claimed that her husband was ill and that she was taking him to the emergency room. At that time, plaintiff declined an ambulance. Defendant smelled alcohol emanating from plaintiff and asked plaintiff if she had been drinking. Plaintiff responded "yes, and that they [she and her husband] had been celebrating their marriage." Defendant then asked plaintiff to perform field sobriety tests. Based on her perform-

---

1. Defendant is a "protector" as the term is used in the statutes discussed in this case.

ance, defendant believed plaintiff was impaired and called the State Highway Patrol. Trooper Leah McCall ("Trooper McCall") arrived, summoned an ambulance for plaintiff's husband, called for a "roll-back" to pick up plaintiff's minivan, and arrested plaintiff. Defendant and Officer Helton waited until plaintiff's vehicle was removed and then resumed their assigned duties.

Plaintiff was subsequently convicted of Level I Driving While Impaired ("DWI") and driving while license revoked in the District Court of Macon County from which she timely appealed to the Superior Court. In Superior Court, plaintiff filed a motion to suppress the evidence of the stop, claiming that defendant did not have authority to stop her on suspicion of driving while impaired. The trial court denied the motion, finding that while defendant acted outside of his statutory authority, there was no showing of a "substantial violation" of plaintiff's statutory rights under Chapter 15A of the North Carolina General Statutes, and plaintiff's constitutional rights were not violated. Plaintiff's case was remanded to district court where her DWI conviction became final.

Plaintiff filed a civil action against defendant in his individual capacity on 17 October 2007, claiming that defendant was acting outside of his lawful authority when he stopped her vehicle on 3 November 2006. As a result of the unlawful stop, plaintiff asserted that the tort of false imprisonment was committed against her. Plaintiff sought compensatory as well as punitive damages. Defendant filed a motion for summary judgment on 24 March 2008, asserting that the stop was within his lawful authority, and he was therefore entitled to qualified immunity while acting in his official capacity. Plaintiff also filed a motion for partial summary judgment as to liability on 7 April 2008. These motions were heard on 14 May 2008 in District Court before Judge Richard K. Walker. On 2 June 2008, Judge Walker denied defendant's motion for summary judgment and granted plaintiff's motion for partial summary judgment. Defendant appeals from the trial court's interlocutory order.

## Analysis

### I. Interlocutory Appeal

[1] It is well established that:

Usually, the trial court's denial of a motion for summary judgment is not immediately appealable, as it is interlocutory. However,

where a substantial right is affected, an interlocutory order may be immediately appealable. In [his] statement of grounds for appellate review, defendant[] ha[s] correctly pointed out that this Court has held that where an order denies Officers the benefit of qualified immunity, as here, it affects a substantial right and is thus subject to immediate appeal.

*Rogerson v. Fitzpatrick*, 170 N.C. App. 387, 390, 612 S.E.2d 390, 392 (2005) (citation omitted). As in *Rogerson*, the present case is properly before this Court, despite its interlocutory status, because the substantial right of qualified immunity is at issue.

## II. Standard of Review—Summary Judgment

[2] Defendant appeals from a denial of summary judgment, which is reviewed *de novo* by this Court. *Falk Integrated Tech., Inc. v. Stack,* 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The record "must be viewed in the light most favorable to the party opposing the motion, and such party is entitled to the benefit of all inferences in his favor which may be reasonably drawn from such material." *Whitley v. Cubberly*, 24 N.C. App. 204, 206-07, 210 S.E.2d 289, 291 (1974) (citation omitted).

> The party moving for summary judgment bears the burden of establishing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. A movant may meet its burden by showing either that: (1) an essential element of the non-movant's case is nonexistent; or (2) based upon discovery, the non-movant cannot produce evidence to support an essential element of its claim; or (3) the movant cannot surmount an affirmative defense which would bar the claim.

*Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995) (citations omitted), *rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997). Defendant argues that he is entitled to the affirmative defense of qualified immunity, which is a total bar to plaintiff's recovery. Therefore, he claims the trial court erred in denying his motion for summary judgment and granting plaintiff's motion for partial summary judgment.

## III. Qualified Immunity

At the time of the alleged tort, defendant was "[a]n employee of the North Carolina Wildlife Resources Commission sworn in as an officer and assigned to duties which include exercise of law-enforcement powers." N.C. Gen. Stat. § 113-128(9) (2007). "The general rule is that suits against public officials are barred by the doctrine of governmental immunity where the official is performing a governmental function, such as providing police services." *Thomas v. Sellers*, 142 N.C. App. 310, 314, 542 S.E.2d 283, 286 (2001). While defendant in this case is not a "police officer," he is imbued with law enforcement powers, and as a state official, he is entitled to the defense of qualified immunity.

Plaintiff sued defendant in his individual capacity, but in order to surmount the defense of qualified immunity, she must show that defendant's alleged tortious conduct was " 'malicious,' " " 'corrupt,' " or " 'outside the scope of [his] official authority.' " *Webb v. Nicholson*, 178 N.C. App. 362, 366, 634 S.E.2d 545, 547 (2006) (quoting *Mabrey v. Smith*, 144 N.C. App. 119, 122, 548 S.E.2d 183, 186, *disc. review denied*, 354 N.C. 219, 554 S.E.2d 340 (2001)). Plaintiff claims that defendant acted outside the scope of his authority when he pulled her van over and therefore he abandoned the cloak of qualified immunity and may be sued in his individual capacity.

## IV. Scope of Defendant's Duties

The crux of this case is whether defendant had the authority to stop plaintiff and conduct the field sobriety tests. If defendant was within his statutory authority, then he is entitled to qualified immunity, a bar to plaintiff's claim, and was therefore entitled to summary judgment.

Defendant's law enforcement powers are found in N.C. Gen. Stat. § 113-136 (2007), which states in pertinent part:

(a) Inspectors and protectors are granted the powers of peace officers anywhere in this State, and beyond its boundaries to the extent provided by law, in enforcing all matters within their respective subject-matter jurisdiction as set out in this section.

. . . .

(d) Inspectors and protectors are additionally authorized to arrest without warrant under the terms of G.S. 15A-401(b) for felonies, for breaches of the peace, for assaults upon them or in

their presence, and for other offenses evincing a flouting of their authority as enforcement officers or constituting a threat to public peace and order which would tend to subvert the authority of the State if ignored. In particular, they are authorized, subject to the direction of the administrative superiors, to arrest for violations of G.S. 14-223, 14-225, 14-269, and 14-277.

(d1) In addition to law enforcement authority granted elsewhere, a protector has the authority to enforce criminal laws under the following circumstances:

> (1) When the protector has probable cause to believe that a person committed a criminal offense in his presence and at the time of the violation the protector is engaged in the enforcement of laws otherwise within his jurisdiction; or

> (2) When the protector is asked to provide temporary assistance by the head of a State or local law enforcement agency or his designee and the request is within the scope of the agency's subject matter jurisdiction.

While acting pursuant to this subsection, a protector shall have the same powers invested in law enforcement officers by statute or common law. When acting pursuant to (2) of this subsection a protector shall not be considered an officer, employee, or agent for the state or local law enforcement agency or designee asking for temporary assistance. Nothing in this subsection shall be construed to expand the authority of protectors to initiate or conduct an independent investigation into violations of criminal laws outside the scope of their subject matter or territorial jurisdiction.

. . . .

(f) Inspectors and protectors are authorized to stop temporarily any persons they reasonably believe to be engaging in activity regulated by their respective agencies to determine whether such activity is being conducted within the requirements of the law, including license requirements. If the person stopped is in a motor vehicle being driven at the time and the inspector or protector in question is also in a motor vehicle, the inspector or protector is required to sound a siren or activate a special light,

bell, horn, or exhaust whistle approved for law-enforcement vehicles under the provisions of G.S. 20-125(b) or 20-125(c).

(g) Protectors may not temporarily stop or inspect vehicles proceeding along primary highways of the State without clear evidence that someone within the vehicle is or has recently been engaged in an activity regulated by the Wildlife Resources Commission. Inspectors may temporarily stop vehicles, boats, airplanes, and other conveyances upon reasonable grounds to believe that they are transporting seafood products; they are authorized to inspect any seafood products being transported to determine whether they were taken in accordance with law and to require exhibition of any applicable license, receipts, permits, bills of lading, or other identification required to accompany such seafood products.

. . . .

(l) Nothing in this section authorizes searches within the curtilage of a dwelling or of the living quarters of a vessel in contravention of constitutional prohibitions against unreasonable searches and seizures.

Defendant claims that his authority to stop an individual he believes is intoxicated lies under § 113-136(d), the relevant text being—"[i]nspectors and protectors are additionally authorized to arrest without warrant under the terms of G.S. 15A-401(b) for . . . offenses evincing a flouting of their authority as enforcement officers *or constituting a threat to public peace and order which would tend to subvert the authority of the State if ignored.*" N.C. Gen. Stat. § 113-136(d) (emphasis added). This statute points to the terms of N.C. Gen. Stat. § 15A-401(b) (2007), which states in pertinent part:

(b) Arrest by Officer Without a Warrant.—

(1) Offense in Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence.

(2) Offense Out of Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe:

a. Has committed a felony; or

b. Has committed a misdemeanor, and:

1. Will not be apprehended unless immediately arrested, or

2. May cause physical injury to himself or others, or damage to property unless immediately arrested; or

c. Has committed a misdemeanor under G.S. 14-72.1, 14-134.3, 20-138.1, or 20-138.2; or

Specifically, as it pertains to this case, § 15A-401(b)(1) grants authority for an officer to arrest a person when the officer has probable cause to believe that the person has committed a crime in his or her presence.

A reasoned analysis of the facts in this case would suggest that defendant had probable cause to believe that plaintiff was committing the crime of impaired driving *in his presence*, which would be a situation governed by § 15A-401(b)(1). We note that reasonable suspicion, not probable cause, is required to make the initial stop of a driver for suspected DWI. *State v. Jones*, 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989) (trial court did not err in finding that reasonable suspicion existed for an officer to stop the defendant where the defendant was weaving in his own lane at a speed 20 miles per hour below the posted speed limit). Probable cause must then exist to arrest without a warrant for DWI. N.C. Gen. Stat. § 15A-401(b).

Because we find that § 15A-401(b)(1) grants law enforcement the power to arrest for crimes committed in the officer's presence, as in the case *sub judice*, we need not address the applicability of § 15A-401(b)(2)(c), which grants authority for an officer to arrest without a warrant if a person, out of the officer's presence, has violated N.C. Gen. Stat. § 20-138.1 (2007), which criminalizes impaired driving.

We acknowledge that § 113-136(d) only authorizes an officer to arrest if one of the enumerated offenses has occurred. We find that driving while impaired constitutes "a threat to public peace and order which would tend to subvert the authority of the State if ignored." N.C. Gen. Stat. § 113-136(d). Driving while impaired clearly is a threat to public peace as there is a high risk of a single or multiple vehicular accidents on our public roadways. *See Bullins v. Schmidt*, 322 N.C. 580, 584, 369 S.E.2d 601, 604 (1988) ("[D]runken drivers are a deadly menace to innocent persons. Officers have a duty to remove them from the highways."), *abrogated on other*

*grounds* by *Young v. Woodall*, 343 N.C. 459, 471 S.E.2d 357 (1996). The State has criminalized this behavior and the authority of the State to charge an offender would be subverted if an officer imbued with power to arrest was required to ignore the crime occurring in his or her jurisdiction.

Plaintiff points out that § 113-136(d1) states, "[n]othing in this *subsection* shall be construed to expand the authority of protectors to initiate or conduct *an independent investigation* into violations of criminal laws outside the scope of their subject matter or territorial jurisdiction." N.C. Gen. Stat. § 113-136(d1) (emphasis added). Plaintiff claims that this language refers to § 113-136(d) *and* § 113-136(d1) and that defendant was conducting an unauthorized independent investigation into her sobriety when he pulled her over and conducted the field sobriety tests. Upon review, we find that the language pertaining to independent investigation only applies to § 113-136(d1) and not § 113-136(d).

It is an elementary rule of statutory construction that, all sections and subsections of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable intendment. Any irreconcilable ambiguity in such cases should be resolved so as to effectuate the true legislative intent.

*In re Forestry Foundation*, 35 N.C. App. 414, 422, 242 S.E.2d 492, 497 (1978) (citations omitted).

Here, § 113-136(d) grants law enforcement authority to inspectors and protectors, while § 113-136(d1) lists two *additional* situations where authority to enforce criminal laws is granted to protectors only, and the language regarding independent investigation falls therein. In reviewing the statute as a whole, we recognize that § 113-136(l) states, "[n]othing in this *section* authorizes searches within the curtilage of a dwelling or of the living quarters of a vessel in contravention of constitutional prohibitions against unreasonable searches and seizures." (Emphasis added.) Clearly, the legislature intended § 113-136(l) to pertain to all portions of § 113-136 in order to establish constitutional parameters to the authority given to protectors and inspectors. Conversely, § 113-136(d1) uses the term "subsection" in reference to § 113-136(d1) alone. Had the legislature intended for the independent investigation language to pertain to the entire

statute, including § 113-136(d), the term "section" would have been utilized as opposed to "subsection."[2]

## Conclusion

In sum, we find that defendant in this case was authorized to arrest plaintiff pursuant to N.C. Gen. Stat. § 113-136(d), under the terms of N.C. Gen. Stat. 15A-401(b)(1), because the officer had probable cause to believe that a criminal offense occurred in his presence, which constituted a threat to public peace and order which would tend to subvert the authority of the State if ignored.[3] Because defendant was acting within his capacity as a state official, he is entitled to qualified immunity. Accordingly, we must reverse the trial court's grant of summary judgment for plaintiff and remand this case for further proceedings not inconsistent with this opinion.[4]

Reversed and remanded.

Judges WYNN and ERVIN concur.

---

2. Plaintiff also claims that according to § 113-136(f) and § 113-136(g), defendant was not allowed to temporarily stop a vehicle unless there was clear evidence that an activity regulated by the Wildlife Resources Commission was at issue. We need not address this argument as these subsections do not pertain to the police powers of § 113-136(d) nor do they reference that subsection or the section as a whole.

3. We note that defendant chose to call Trooper McCall to effectuate the arrest, but he was not required to do so.

4. Based on our determination, we need not address defendant's argument regarding good faith qualified immunity.