McGEE, Chief Judge.
Hobco Auto Sales, Inc. ("Plaintiff") brought an action for declaratory judgment in an effort to stop foreclosure proceedings against its real property located at 905 Capital Boulevard in Raleigh ("the Property"). Specifically, Plaintiff challenged the enforceability of a deed of trust, held by the Estate of Harper H. House ("Mr. House" and "the House Estate"), securing the Property for a promissory note that was issued before Plaintiff owned the Property. Plaintiff appeals from the trial court's grant of summary judgment in favor of James Kenneth Dew and Kathy House Dew ("the Dews"); Statewide Trustee, LLC, Trustee; and Dollie P. House ("Mrs.House"), personally, as executrix of the House Estate, and as trustee under the testamentary trust created under the last will and testament of Mr. House (collectively "Defendants"). Plaintiff also appeals from the trial court's denial of Plaintiff's motion for summary judgment against Defendants.
Although Plaintiff argued before the trial court that Defendants were not entitled to summary judgment under the doctrines of claim preclusion and collateral estoppel, Plaintiff abandoned these arguments in its brief before this Court. Regarding the issues fully argued in Plaintiff's brief, the House Estate's pending action to foreclose on the Property was not barred by the statute of limitations, and the trial court acted within its discretion in declining to apply judicial estoppel. Further, Plaintiff did not establish that there were material questions of fact as to whether the House Estate's lien on the Property was ever discharged. Therefore, the trial court did not err in granting summary judgment in favor of Defendants. Accordingly, we affirm the trial court.
I. Standard of Review
This Court reviews a trial court's order granting summary judgment de novo. Builders Mut. Ins. Co. v. North Main Const., Ltd .,361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). Summary judgment may be entered when there is no genuine issue as to any material fact and the moving parties are entitled to judgment in their favor as a matter of law. Blades v. City of Raleigh,280 N.C. 531, 544, 187 S.E.2d 35, 43 (1972). The facts "must be viewed in the light most favorable to the party opposing the motion, and such party is entitled to the benefit of all inferences in [the party's] favor which may be reasonably drawn from such material." Parker v. Hyatt,196 N.C.App. 489, 492, 675 S.E.2d 109, 111 (2009) (citation omitted). This Court will not review a denied motion for summary judgment on appeal from a final judgment on the merits of a case. McIntyre v. McIntyre,188 N.C.App. 26, 29, 654 S.E.2d 798, 800, aff'd per curiam,362 N.C. 503, 666 S.E.2d 749 (2008) (citation omitted).[1]
II. Background
The Dews received title to the Property by general warranty deed, recorded on 14 November 2000. They borrowed $100,000.00 from Mr. House, the father of Kathy House Dew, on 4 January 2001, and executed a promissory note in favor of Mr. House ("the House note") that stated, in part:
The principal and interest shall be due and payable as follows: One Thousand and No/100 ($1000) due February 1, 2001 and every [first] day of each month thereafter until 04/01/2025 or paid in full.... If not sooner paid, the entire remaining indebtedness shall be due and payable on January 01, 2002.
The promissory note was secured by a deed of trust on the Property ("the House deed of trust"), which was recorded with the Wake County Register of Deeds on 5 January 2001.
Mrs. House later stated in an affidavit that the Dews made payments on the House note "on a fairly regular basis from April 2001 through December 2007." However, beginning in August 2001, those payments were consistently less than $1,000.00 per month. The Dews stopped making payments to Mr. House after December 2007.
The Dews borrowed an additional $231,000.00 from InterBay Funding, LLC ("InterBay") on 16 January 2006. The Dews represented to InterBay that they owned the Property "free and clear of all liens, encumbrances and charges [,]" and the loan from InterBay was also secured by a deed of trust on the Property, recorded on 27 January 2006. InterBay subsequently assigned its interest in that deed of trust to Bayview Loan Servicing, LLC ("Bayview") (hereinafter referred to as "the Bayview deed of trust"), which was recorded on 27 February 2007.
Mr. House died on 7 February 2010. Under his will, Mrs. House was named executrix of the House Estate and the residuary of the House Estate was placed in a testamentary trust, with Mrs. House as trustee. Mrs. House filed an initial inventory of the House Estate's assets in probate proceedings on 14 October 2010, and listed $183,000.00 as the amount owed to the House Estate under the House note.
The Dews filed a petition for Chapter 13 bankruptcy on 2 August 2010. The asset and liability schedules they filed with the bankruptcy court did not list the House Estate as a creditor having an interest in the Property. However, the Dews filed a motion ("the Dews' motion") with the bankruptcy court to sell the Property ("the proposed sale"), representing that Mrs. House, as executrix, had "agreed to release [the House Estate's] lien in exchange for [ ] partial payment" from the sale of the Property as a "second mortgage lien[holder]" and that Bayview would receive funds from the sale as the "first mortgage lien [holder.]" The bankruptcy attorney for the Dews certified that Mrs. House received notice of the pending motion.
The bankruptcy court granted the Dews' motion and included the proposed sale of the Property as part of their Chapter 13 plan, which was confirmed by the bankruptcy court on 5 May 2011. The bankruptcy court discharged the Dews from bankruptcy on 20 June 2011. The proposed sale of the Property was never completed.
The substitute trustee of the Bayview deed of trust subsequently instituted foreclosure proceedings against the Property. Bayview purchased the Property at the foreclosure sale on 9 August 2011 for $242,100.00.[2] The Property was conveyed to Bayview by Substitute Trustee's Deed, recorded on 2 December 2011. The deed stated that the property was "specifically conveyed 'AS IS, WHERE IS[,]' " and without warranty as to the title.
Mrs. House filed an amended inventory in the House Estate probate proceedings ("the amended inventory"), dated 30 September 2011, which included a handwritten notation that the value of the debt for the House note was "0" (zero). However, on 10 February 2012, Mrs. House filed an action to foreclose on the Property. Mrs. House filed an affidavit in the foreclosure proceeding on 28 March 2012, stating that the total amount due on the House note, as of 19 December 2011, was $237,020.54. The Wake County Clerk of Court's estates division conducted an audit of the annual accounting of the House Estate and, in a report filed on 18 May 2012, this audit was approved based on the assets listed in the amended inventory, including the "0" valuation of the House note.
Bayview conveyed the Property to Thomas C. Hobbs, Jr. ("Mr.Hobbs") in fee simple by special warranty deed on 9 July 2012 for $204,000.00. Mr. Hobbs then conveyed the Property to Plaintiff, a company owned by Mr. Hobbs, also in fee simple by special warranty deed, on 30 August 2012. Both of these conveyances involving Mr. Hobbs were recorded on 30 August 2012.
Plaintiff filed the present action on 22 January 2013 seeking, inter alia,a declaration that the House deed of trust was unenforceable, thereby extinguishing the House Estate's ability to foreclose on the Property. The Dews and Mrs. House filed separate motions for summary judgment against Plaintiff on 28 February 2014. Plaintiff filed a motion for summary judgment against Defendants on 21 March 2014. By order entered 2 June 2014, the trial court denied Plaintiff's motion for summary judgment and granted Defendants' motions for summary judgment. Plaintiff appeals.
III. Analysis
A. Res Judicata
Plaintiff first contends the debt secured by the House deed of trust was extinguished when Bayview foreclosed on the Property. Specifically, Plaintiff argues the bankruptcy court "adjudicated" that the Bayview deed of trust had lien priority over the House deed of trust when it granted the Dews' motion to sell the Property. Even though the proposed sale of the Property in the Dews' Chapter 13 plan was never completed, Plaintiff maintains that, "under the doctrines of res judicata and collateral estoppel," the effect of this "adjudication" by the bankruptcy court was binding on the House Estate and resulted in the House Estate holding a "junior" interest in the Property at the time of the Bayview foreclosure, which was extinguished thereby. See In re Foreclosure of McNeill,182 N.C.App. 464, 469, 642 S.E.2d 532, 536 (2007) (holding that a foreclosure sale under a deed of trust "extinguishes all liens, encumbrances[,] and junior mortgages[.]" (citation omitted)).
Because the terminology used to describe the preclusive effect of prior adjudications can be inconsistent, we begin by defining the terms. "[R]es judicatagenerally refers to the law of former adjudications," In re Varat Enters., Inc.,81 F.3d 1310, 1315 n .5 (4th Cir.1996), and "encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel." Id.at 1315. Both claim preclusion and issue preclusion apply to bankruptcy court orders. See id.("The doctrine of res judicataapplies in the bankruptcy context.").
Barrow v. D.A.N. Joint Venture Prop. of N.C., LLC,---N.C.App. ----, ----, 755 S.E.2d 641, 645, disc. review denied, 367 N.C. 507, 758 S.E.2d 871 (2014). However, "the term 'res judicata'is sometimes used to refer to the rules of claim preclusion, just as 'collateral estoppel' is used to mean issue preclusion[.]" In re Varat Enters.,81 F.3d at 1315 n. 5. Assuming that Plaintiff was invoking claim preclusion when it referred to "res judicata" in its brief,
[c]laim preclusion applies to an adjudication when (1) a court of competent jurisdiction enters a final judgment on the merits; (2) there is a second suit involving the claimants or parties in privity with the claimants; and (3) the claims in the second suit are based on the same cause of action as the first suit or could have been asserted in the first suit.
Barrow,--- N.C.App. at ----, 755 S.E.2d at 645-46. In order for collateral estoppel to apply,
(1) the issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.
Williams v. City of Jacksonville Police Dep't,165 N.C.App. 587, 593, 599 S.E.2d 422, 428-29 (2004). Plaintiff's brief cites no authority discussing these requirements for claim preclusion or collateral estoppel, nor does it provide any meaningful argument that these requirements have been met. "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." Goodson v. P.H. Glatfelter Co.,171 N.C.App. 596, 606, 615 S.E.2d 350, 358 (2005). Therefore, these issues are deemed abandoned. N.C. R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned .").
B. Statute of Limitations
Plaintiff contends Mrs. House's action to foreclose on the Property is barred by the statute of limitations set forth in N.C. Gen.Stat. § 1-47(2) (2013), which provides for a ten-year limitation on actions accruing "[u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto." Plaintiff maintains that the right of Mr. House or his estate to foreclose on the Property was triggered on 4 January 2002, purportedly when the loan secured by the House deed of trust matured, and that the present foreclosure action is barred because it was filed in February 2012, approximately ten years and one month after that right was triggered.
Although the House deed of trust states that "[t]he final due date for payment of [the House note], if note [sic] sooner paid, is January 04, 2002," it also states that the Dews would not be in default so long as they paid the House note secured thereby "in accordance with [the note's] terms[.]" However, the House note's terms for repayment state that
[t]he principal and interest shall be due and payable as follows: One Thousand and No/100 ($1000) due February 1, 2001 and every [first] day of each month thereafter until 04/01/2025 or paid in full.... If not sooner paid, the entire remaining indebtedness shall be due and payable on January 01, 2002.
Thus, according to the terms of the House note, the debt matured either on 1 January 2002 or 1 April 2025; however, according to the House deed of trust, the debt matured on 4 January 2002. Plaintiff provides this Court with no suggestion as to how to reconcile these discrepancies.
Regardless, even assuming arguendothat the House note matured on 1 January 2002, the earliest of those possible maturation dates, Plaintiff's argument is still without merit. Our Courts consistently have held that any "[p]artial payment, intended to acknowledge [an] underlying debt, will also toll the statute of limitations on the original cause of action." American Multimedia, Inc. v. Freedom Distributing, Inc.,95 N.C.App. 750, 753, 384 S.E.2d 32, 34 (1989). The Dews' last payment on the House note occurred in December 2007. Plaintiff's brief does not contest this fact, nor does it contest that the ongoing payments of the Dews to Mr. House from April 2001 to December 2007 were anything other than a continuing acknowledgement of their debt under the House note, and the record does not suggest another reasonable interpretation more favorable to Plaintiff. See Parker,196 N.C.App. at 492, 675 S.E.2d at 111 ("[T]he party opposing [a] motion [for summary judgment] ... is entitled to the benefit of all inferences in [the party's] favor which may be reasonablydrawn from [the record]." (emphasis added)). Therefore, assuming arguendothat the House note matured on 1 January 2002, thereby triggering Mr. House's right to foreclose on the Property under the House deed of trust, the statute of limitations was tolled by each subsequent partial payment made by the Dews on the House note.[3] Because it is uncontested that the last payment made by the Dews on the House note occurred in December 2007, the statute of limitations would not have run until December 2017. Mrs. House's foreclosure action was filed in February 2012 and, therefore, was not barred by N.C.G.S. § 1-47(2).
Plaintiff also argues that the trial court "committed reversible error by extending the [statute of] limitations period beyond ten years" under N.C. Gen.Stat. § 1-47(3) (2013). N.C.G.S. § 1-47(3) provides for a ten-year limitation on any action
[f]or the foreclosure of a mortgage, or deed in trust for creditors with a power of sale, of real property, where the mortgagor or grantor has been in possession of the property,within ten years after the forfeiture of the mortgage, or after the power of sale became absolute, or within ten years after the last payment on the same.
(emphasis added). Notwithstanding our analysis of N.C.G.S. § 1-47(2) above, Plaintiff also contends that N.C.G.S. § 1-47(3) bars Mrs. House from foreclosing on the Property because the Dews were not in possession of the Property for a ten-year period during which Mrs. House could have filed her foreclosure action. Plaintiff misinterprets this statute. "In order for a foreclosure to be barredunder this section, two events must occur: (1) the lapse of ten years after the forfeiture or after the power of sale became absolute or after the last payment, and (2) the possession of the mortgagor during the entire ten-year period." In re Foreclosure of Lake Townsend Aviation,87 N.C.App. 481, 484, 361 S.E.2d 409, 411 (1987) (emphasis added). Therefore, Mrs. House's foreclosure action was not barred by N.C.G.S. § 1-47(3)for the very reasonthat the Dews were not in continuous possession of the Property for the requisite period of time.
C. Judicial Estoppel
Plaintiff contends the trial court erred by not applying the doctrine of judicial estoppel, which would have held Mrs. House to the "0" valuation of the House note debt in the amended inventory that she filed in the House Estate probate proceedings. "[J]udicial estoppel is to be applied in the sound discretion of our trial courts." Whitacre P'ship v. Biosignia, Inc.,358 N.C. 1, 33, 591 S.E.2d 870, 891 (2004). "[T]he test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." Frost v. Mazda Motor of Am., Inc.,353 N.C. 188, 199, 540 S.E.2d 324, 331 (2000) (citations and internal quotation marks omitted). Generally, when deciding whether to apply judicial estoppel, the trial court must consider three factors.
First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
Whitacre,358 N.C. at 29, 591 S.E.2d at 888-89 (2004) (citations and internal quotation marks omitted). However, "[i]f a trial court [reasonably] believes that justice would not be served by judicially estopping a party's factual contention, it may decline to do so." Id.at 33, 591 S.E.2d at 891. For instance, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." Id .at 30, 591 S.E.2d at 889 (citation and internal quotation marks omitted).
In the present case, the trial court found that
the Amended Inventory signed by Mrs. House and filed in the House Estate proceeding is clearly inconsistent with the position she takes in this action, thus satisfying the first and only essential factor of the Whiteacre[sic] test. However, the undersigned finds colorable-if not undisputed-the explanation provided by Mrs. House's counsel that the inconsistent statement in the Amended Inventory in the House Estate proceeding was the result of a clerical error.
Based on this finding, Plaintiff argues the trial court "proceeded to sit as the jury and resolve factual disputes in favor of [ ][D]efendants in order to justify denying the application of judicial estoppel."
Plaintiff conflates the trial court's declining to apply judicial estoppel with its granting summary judgment in favor of Defendants. By decliningto apply judicial estoppel, the trial court did not resolvethe question of whether the "0" valuation in the amended inventory was a clerical error. Cf. Whitacre,358 N.C. at 39, 591 S.E.2d at 895 ("[When] applyingjudicial estoppel, [a trial court can potentially] leav[e] no triable issues of material fact, [making] summary judgment [ ] appropriate." (emphasis added)). The trial court did just the opposite and left the question unresolved. Moreover, based on the record before us, we do not believe that the trial court's decision not to apply judicial estoppel was manifestly unsupported by reason. Regardless, for reasons that will be explained infra,the trial court did not need to resolve whether the "0" valuation was a clerical error in order to grant summary judgment in favor of Defendants.
D. Evidence of Discharged Debt
Plaintiff contends the following evidence established a material question of fact as to whether the debt owed under the House note was discharged by Mr. House or his estate at some point: (1) the Dews represented to Interbay in their 2006 loan application that they owned the Property free and clear of any liens or encumbrances; (2) the Dews did not list Mr. House as a creditor in their bankruptcy filings; (3) Mrs. House listed the valuation for the House note as "0" in the amended inventory that was filed in the House Estate probate proceedings; (4) an audit of the annual accounting of the House Estate probate proceeding was approved based on the assets listed in the amended inventory; and (5) Mrs. House testified at deposition that she did not plan to foreclose on the Dews when they owned the Property because she was "confident" they would have paid the money they owed on the House note "if they ever got the money," but that she could "live without" the money if they did not pay her back. These proffered facts, taken as true, are not sufficient to establish that the debt owed under the House note was discharged.
"[C]ancellation or discharge of [a debt] obligation is an affirmative defense and ... [the] payor[ ] bears the burden of proving a valid discharge." Almond v. Rhyne,108 N.C.App. 605, 610, 424 S.E.2d 231, 234 (1993). N.C. Gen.Stat. § 25-3-604(a) (2013) provides that
[a] person entitled to enforce an instrument ... may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act,such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.
(emphasis added). "A parol renunciation is not sufficient." Manly v. Beam,190 N.C. 659, 661, 130 S.E. 633, 634 (1925) ; accord First Commerce Bank v. Dockery,171 N.C.App. 297, 301, 615 S.E.2d 314, 316 (2005) (holding that a verbal renunciation is insufficient to discharge a debt under N.C.G.S. § 25-3-604(a) ). Even assuming arguendothat Mr. House or his estate meantto discharge the debt on the House note at some point, Plaintiff has provided no evidence, or forecast of evidence, that Mr. House or his estate expressly renounced their rights against the Dews-or any subsequent purchasers of the Property-through a signed writing or that they committed some intentional voluntary act, as contemplated by N.C.G.S. § 25-3604(a), that would be sufficient to actually discharge the House note debt. See Manly,190 N.C. at 660, 130 S.E. at 634 ("An absolute and unconditional renunciationof [a lienholder's] rights against the principal debtor, made at or after maturity of the instrument, discharges the instrument." (emphasis added)).
The only remaining relevant facts are as follows: the House deed of trust was recorded in January 2001, and the Bayview deed of trust was recorded in January 2006. Standing alone, under North Carolina's "pure race" recordation statute, the House deed of trust had lien priority over the Bayview deed of trust. SeeN.C. Gen.Stat. § 47-18 (2013). Therefore, as a junior lienholder, Bayview's foreclosure of the Property did not extinguish the debt secured by the House deed of trust. See Shaikh v. Burwell,105 N.C.App. 291, 293, 412 S.E.2d 924, 926 (1992) ("[T]he purchaser at the foreclosure sale of a junior lien purchases the property subject to senior liens."). Plaintiff's argument is without merit.
IV. Conclusion
In challenging the enforceability of the House deed of trust, Plaintiff abandoned in its brief any arguments regarding claim preclusion or collateral estoppel. The House Estate's pending action to foreclose on the Property was not barred by the statute of limitations. The trial court acted within its discretion in declining to apply judicial estoppel. Plaintiff has not established material questions of fact as to whether the House note was ever discharged. Therefore, the trial court did not err in granting summary judgment in favor of Defendants.
AFFIRMED.
Judges CALABRIA and McCULLOUGH concur.
Report per Rule 30(e).
Opinion
Appeal by Plaintiff from order entered 2 June 2014 by Judge Lucy N. Inman in Superior Court, Wake County. Heard in the Court of Appeals 20 January 2015.

A grant of summary judgment is a judgment on the merits. Herring v. Winston-Salem/Forsyth Cty. Bd. of Educ., 188 N.C.App. 441, 445, 656 S.E.2d 307, 310 (2008) (citation omitted). Therefore, we will not review Plaintiff's denied motion for summary judgment.

According to the Dews' bankruptcy filing, the Property had a tax assessed value of $412,148.00 as of 30 August 2010.

Plaintiff also argues that these subsequent payments constituted oral modifications of the House deed of trust, which are proscribed by the statute of frauds in N.C. Gen.Stat. § 22-2 (2013) (requiring a signed writing for, inter alia, "[a]ll contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them [.]"). See Clifford v. River Bend Plantation, Inc., 312 N.C. 460, 465, 323 S.E.2d 23, 26 (1984) ("When the original agreement comes within the Statute of Frauds, subsequent oral modifications of the agreement are ineffectual."). However, Plaintiff conflates the modification of an agreement under N.C.G.S. § 22-2 with well-settled caselaw regarding the effect of acknowledgement and ongoing payment of an existing debt by a debtor. See American Multimedia, 95 N.C.App. at 753, 384 S.E.2d at 34 ("Partial payment, intended to acknowledge [an] underlying debt, will also toll the statute of limitations on the original cause of action."); see also N.C. Gen.Stat. § 1-26 (2013) ("No acknowledgment or promise is evidence of a new or continuing contract, from which the statutes of limitations run, unless it is contained in some writing signed by the party to be charged thereby; but this section does not alter the effect of any payment of principal or interest. " (emphasis added)).